AUSTIN B. IRWIN, Appellant, *v.* JOHN KLEIN and Others, Respondents.

First Department, December 14, 1934.

24

*Fred P. Harrington* of counsel [*Edward A. Scott*, attorney], for the appellant.

*Al. J. D'Auria* of counsel [*Thomas A. Saulsbury*, attorney], for respondent John Klein.

*Walter L. Glenney* of counsel [*Pettigrew & Glenney*, attorneys], for the respondent Paramount Publix Corporation.

*Benjamin C. Loder* of counsel [*John H. Scully*, attorney], for the respondent R. K. O. Studios, Inc.

MARTIN, J. Austin B. Irwin, a police officer of the city of New York, brought this action to recover damages for personal injuries

sustained while performing his duties as a motorcycle escort to an automobile owned by the defendant John Klein. While performing such services, Klein's automobile struck and severely injured him. The owner of the automobile and the two other defendants were made parties to this action.

The defendant R. K. O. Studios, Inc., a motion picture producer, engaged in business in Hollywood, Cal., was making an "Amos and Andy" picture entitled "Check and Double Check." The scene of the picture was laid in Harlem and to obtain local color it was decided to take certain Harlem street activities and transmit the film to Hollywood, where, by some unique method known to the moving picture industry, the taxicab of "Amos and Andy" was superimposed on the film showing the Harlem scenes. R. K. O. Studios, Inc., had no eastern studio. It communicated with the Paramount Publix Corporation, another defendant in this action, and sent its business representative and a cameraman to New York. A contract was entered into, by the terms of which Paramount Publix Corporation was to furnish the "necessary personnel, equipment and materials for the above work," which was to be billed to R. K. O. Studios, Inc., on the basis of cost plus a service charge of thirty-three and one-third per cent.

When all arrangements were completed, a car was hired by the Paramount Publix Corporation from the defendant Klein through the Whitney Cadillac Service, Inc. Klein furnished the chauffeur who drove the car to the Paramount studio and there placed it under the orders of that studio.

The plaintiff was under the immediate direction of those charged with the operation of the automobile, and while he was on his motorcycle clearing the road so that the picture could be taken, the driver of the automobile, one Reiter, an employee of Klein, operated the car so negligently that it struck plaintiff and threw him to the street. As a result of the accident the plaintiff received a fractured skull and was compelled to remain in the hospital for seven months. When he did report for duty he was assigned to special work and has never been able to resume his duties as a motorcycle officer. He suffered from blurred vision, sometimes double vision and intermittent severe headaches. His hearing is also affected and he has a partial right facial paralysis, weakness in the right eye and weakness in the left arm and left leg.

It is now contended by the plaintiff that the verdict of the jury in his favor against R. K. O. Studios, Inc., and in favor of the defendant Klein is inconsistent; that Klein was liable under section 59 of the Vehicle and Traffic Law, resulting from negligence in the operation of his car, not because it was being used in his business,

but because it was being legally operated with Klein's express consent and permission. It is also argued that the court erred in dismissing the complaint as to Paramount because that company not alone hired the car and chauffeur but had direction and control of the car that struck the plaintiff, the driver of the car having become, for the particular transaction, the servant of Paramount Publix Corporation. The plaintiff also contends that the verdict against R. K. O. Studios, Inc., is inadequate. We agree with all three propositions. All of the defendants are liable and the verdict is insufficient.

The Vehicle and Traffic Law, section 59, provides as follows: "Every owner of a motor vehicle or motorcycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motorcycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The above section makes the owner of an automobile liable if a person is using the car with his permission and consent. This car was used and operated with the consent of the owner to the extent that the owner not only kept the car in repair but supplied the chauffeur and fuel to operate it.

In *Atkins* v. *Hertz Drivurself Stations, Inc.* (261 N. Y. 352, at p. 357), the court said: "At common law there was no liability upon the owner of an automobile for negligence of a person to whom he had loaned it. (*Potts* v. *Pardee*, 220 N. Y. 431.) The adoption of section 282-e of the Highway Law, now section 59 of the Vehicle and Traffic Law, changed all this and created a liability upon the part of the owner for negligence caused through the act of any one driving his car with his consent, express or implied." (See, also, *Dawley* v. *McKibbin*, 217 App. Div. 784, 785; affd., 245 N. Y. 557, wherein the constitutionality of the above section was upheld. It was then known as section 282-e of the Highway Law. See, also, *Plaumbo* v. *Ryan*, 213 App. Div. 517.)

The owner of the car having rented it to the Paramount Publix Corporation and delivered it to its studio to be used by it in making a picture, that corporation in the first instance had complete supervision and control of the automobile. There is no doubt that it was liable under the rule laid down in a number of cases, that where a car is rented to one who takes over the complete control and operation thereof, there is liability in case of negligence on the part of the chauffeur. (*Schmedes* v. *Deffaa*, 214 N. Y. 675.)

There was ample evidence to show control by the Paramount Publix Corporation. This picture was to be taken and supervised

by it. The R. K. O. Studios, Inc., employed that company to perform part of the work. Its representative was furnished with all the labor and material by the Paramount Publix Corporation.

Arthur Cozine, a witness called by Paramount Publix Corporation, stated: " We furnished him with all labor and material. That is, if they wanted any drapery material, if they wanted any carpentry work done, if they wanted any electricians, we furnished that. If they wanted any extra camera equipment, we furnished that."

All the work performed in taking the picture, except that of one or two cameramen, was done by the Paramount Publix Corporation's employees.

The witness Cozine further testified: " Q. And where did you get the automobiles that were required? A. From Whitney's Service, that is, our transportation manager, if there was anybody going on location, would call the Whitney Service and they would send over as many cars as we want."

It was then shown that the manager of Paramount Publix Corporation, Mr. Boyle, supervised the taking of the picture, and that his company paid all the bills for the automobile and other expenses incident to the making of the picture, and added thirty-three and one-third per cent to the bill for service charge.

The Paramount Publix Corporation made the arrangements with the police department for the route that was to be taken and for the making of the picture.

Paramount Publix Corporation's witness Cozine further testified as follows: " Q. Just let me ask you this question. Those particular men that were in the car were men that had been employed, men other than Walker that had been employed by Paramount to assist in taking these pictures, isn't that correct? A. Yes. * * * Q. You got $33\frac{1}{3}\%$ for that service charge, didn't you? A. That is the same charge for our productions in the studio — they actually pay for our overhead. Q. But you get 33% — you got 33% didn't you, overhead charge for your service charge? A. At your R. K. O. studio you pay the same. Q. I don't say that you do not, but I am just asking you if in addition to your actual charges for the services, in addition to that you got 33% for that service, didn't you? A. Yes. * * * Q. You laid out the money for the rental of this car? A. That is right. We paid the bills. Q. And whatever you paid you surcharged the R. K. O. 33% more? A. Yes, sir."

In this case it is important to determine whose work was being done. While it is true that the picture was to be finally made by the R. K. O. Studios, Inc., nevertheless the Paramount Publix Corporation undertook to do the most of the work. It cannot

seriously be contended that Klein, the owner of the automobile, was an independent contractor, nor that it was his work that was being done at the time of the accident. He simply delivered the automobile and chauffeur to the Paramount Publix Corporation to do whatever work they saw fit to do with it. He did not undertake to make the moving picture or to perform specified services. He simply turned over and rented out both the automobile and driver to be used by Paramount Publix Corporation in conjunction with the R. K. O. Studios, Inc. Under such circumstances he had no right or opportunity to control or direct the driver of the automobile. The entire control and direction was given to the hirer, the Paramount Publix Corporation.

The work that was being done at the time of the accident was being done by both the Paramount Publix Corporation and R. K. O. Studios, Inc. The Paramount Publix Corporation claimed that the work was being done by R. K. O. Studios, Inc., and the R. K. O. Studios, Inc., claimed that the work was being performed by the Paramount Publix Corporation. The evidence disclosed that there was an agreement between these parties whereby Paramount Publix Corporation was to do the major portion of the work. It hired all the help, except probably one cameraman. It furnished all the labor and material and all the extra camera equipment. Paramount Publix Corporation paid for all the work and material and paid the salary of substantially all the cameramen and assigned its unit manager, Boyle, to make arrangements to take the picture. Boyle made arrangements for the police escort, arranged with the traffic officers along the route about holding up traffic and Paramount Publix Corporation received an amount equal to the cost plus thirty-three and one-third per cent for all its services, which included that percentage of profit on the rental of the automobile involved in the accident.

The R. K. O. Studios, Inc., called a witness named Vernon L. Walker, who testified that Boyle conferred with him and one Deerholz every night to determine what would be done the following day, and that Boyle principally determined what would be required on the work. The witness Boyle also followed written instructions which Walker had brought on from Hollywood. Walker was in command only in regard to photographing, and Boyle made suggestions how to make the pictures, the number of cameramen needed, and the necessary equipment, which suggestions were followed by Walker.

It is apparent from the evidence, therefore, that the making of the picture, as well as the car and driver, were under the joint supervision and control of both of these defendants.

The principles of law which control in this class of actions are well settled. A servant in the general employ of one person, who is temporarily hired or loaned to another person to do the latter's work, becomes, for the time being, the servant of the hirer, who is liable for his negligence. On the other hand, if the general employer enters into a contract to do the work of another as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence. (*Hartell* v. *Simonson & Son Co.*, 218 N. Y. 345; *Kellogg* v. *Church Charity Foundation*, 203 id. 191.)

In *Schmedes* v. *Deffaa* (*supra*), reversing this court on the very able dissenting opinion of Mr. Justice MILLER (153 App. Div. 819), the law is well stated and the cases cited fully cover the subject. The court quoted from the opinion by Mr. Justice MOODY in *Standard Oil Co.* v. *Anderson* (212 U. S. 215), and said: " In the *Standard Oil Company* case Mr. Justice MOODY referred to the accepted reason for the rule as given by Chief Justice SHAW in the oft-quoted case of *Farwell* v. *Boston & Worcester Railroad Corporation* (4 Metc. 49), *i. e.*, that the master is held liable for the wrongs of his servant because the latter is conducting the master's affairs, a reason which, I think, is sometimes overlooked in determining the master's liability both to servants and to third parties. * * * In discussing the proposition that the true test of liability is whether the servant was doing the defendant's work, Mr. Justice MOODY put the case so plainly and his language is so apposite that it will bear repetition. He said: ' It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men became *pro hac vice* the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must

inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.' "

It seems to us, therefore, that there can be no question about the fact that the Paramount Publix Corporation is liable for the injuries sustained by the plaintiff.

The above testimony discloses that the automobile which caused the injuries to plaintiff was in the service of and under the joint control of both the R. K. O. Studios, Inc., and Paramount Publix Corporation. There is no doubt that they shared in the operation and control of the automobile. There may be a joint control in which all are liable.

The liability of the R. K. O. Studios, Inc., may be based on additional grounds. It was having the picture made for it and placed the direction of same under the control of its cameraman. At the time of the accident the cameraman was directing the course of the car, but the chauffeur, who was under the control of Paramount Publix Corporation, was operating the car. While Paramount Publix rented the car and had the chauffeur furnished with the car, nevertheless both parties are liable for they shared responsibility and jointly operated this car for their mutual benefit and profit.

While it is true that all of the bills were eventually paid by R. K. O. Studios, Inc., the Paramount Publix Corporation rented the car, furnished part of the crew, selected the course the car was to take, supervised the taking of the picture and received thirty-three and one-third per cent over the cost of doing the work as its profit.

There is another reason why this judgment should be reversed. The damages are clearly inadequate. The injuries described by the plaintiff and his doctors were serious and although the plaintiff lost no salary, nevertheless the verdict of $2,500 was not adequate compensation for the injuries received.

Upon the rendition of the verdict, plaintiff moved to set it aside upon all the grounds set forth in section 549 of the Civil Practice Act, also upon the ground that the verdict was contrary to law. The motion was denied.

The whole matter may be summed up in the language used in the case of *Pangburn* v. *Buick Motor Co.* (211 N. Y. 228), where the court said: " This verdict of course was inconsistent and absurd and contrary to the instructions which had been given by the court, and the appellant was entitled to have it set aside if so desired on a motion under section 999 of the Code of Civil Procedure [now section 549, Civil Practice Act], as contrary to the law and to have a new trial." (See, also, *Agoado* v. *Cohen*, 234 App. Div. 37; *Whalen* v. *Stuart*, 194 N. Y. 495; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 id. 84, 98.)

The verdict of the jury in this case was evidently a compromise. We have reached the conclusion that all three defendants are liable, and for the additional reason that the verdict is inadequate, the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL and UNTERMYER, JJ., concur; O'MALLEY, J., dissents and votes to affirm as to defendant Paramount Publix Corporation.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.