AUSTIN B. IRWIN, Respondent, *v.* JOHN KLEIN et al., Appellants.

478

(Argued April 28, 1936; decided July 8, 1936.)

*Al. J. D'Auria* for John Klein, appellant.

*Bertrand L. Pettigrew* for Paramount Publix Corporation, appellant.

*Clarence E. Mellen* and *John H. Scully* for R. K. O. Studios, Inc., appellant.

*Fred P. Harrington, Edward A. Scott, Jr.,* and *Edward A. Scott* for respondent.

LEHMAN, J.   The plaintiff, a police officer, was injured while acting as a motor escort for an automobile used in taking moving pictures in streets in New York for insertion in a film which the defendant R.K.O. Studios, Inc., was then making in Hollywood. For the consequent damages he has recovered a judgment against the three defendants who now appeal to this court.

The evidence fully sustains the finding of the jury that the accident was occasioned by negligence in the operation of the automobile without any contributory negligence on the part of the plaintiff.   The automobile was owned by the defendant John Klein.   He was engaged in the business of renting automobiles.   In the course of his business he sent the automobile to the studios of the defendant Paramount Publix Corporation.   The only directions which he gave to the driver of the automobile were to accept the orders or instructions of that company.   That company had previously entered into an agreement with R.K.O. Studios, Inc., formulated in a letter which read as follows:

" This confirms our verbal understanding with your Mr. A. Dearholt, concerning the taking of certain silent New York atmospheric shots for transparency use in one of your productions.

" We are to furnish you necessary personnel, equipment and materials for the above work which are to be billed to you at cost plus our service charge of 33%, to be invoiced to you at the above address."

An employee of R.K.O. Studios was in the automobile at the time of the accident. He came to New York pursuant to instructions from the office of that company in Hollywood in connection with the making of the motion picture. The plaintiff testified that this employee was the person who gave him directions and explained to him that " he wanted me to eliminate traffic jams so that they could make a continuous film from start to finish; he didn't want the film interfered with or interrupted at any time." It appears also from the plaintiff's testimony that he was informed by this employee of R.K.O. that the automobile was to be operated in a manner which would permit the taking of a moving picture which would make it " appear as though they were avoiding signal lights and going right straight through disregarding everything." The plaintiff's injuries resulted from such operation. The question upon this appeal is whether all or any of the defendants are liable for such injuries; Klein who owned the car, or Paramount Publix Company to which Klein furnished the car and driver, or R.K.O. Studios, Inc., which obtained, by contract with Paramount Publix Company the " necessary personnel, equipment and materials " for the taking of the moving pictures.

An earlier judgment in the sum of $2,500 in favor of the plaintiff against the defendant R.K.O. Studios, Inc., was reversed by the Appellate Division, upon an appeal by the plaintiff, and a new trial granted. (*Irwin* v. *Klein*, 243 App. Div. 23.) The court there held that though, at the time of the accident, the defendant Klein had parted completely with control of the automobile and its driver, Klein remained liable for the negligence of the driver under the provisions of section 59 of the Vehicle and Traffic Law (Cons. Laws, ch. 71), because the automobile was used with his permission, and that the two other defendants were liable for the same negligence because the automobile was operated in their joint

business and subject to their joint control. Upon the second trial the trial justice followed the rules laid down in the opinion of the Appellate Division and charged the jury that if the plaintiff was entitled to a verdict, it must be against all three defendants. The plaintiff now maintains that since the defendants did not appeal from the order of reversal, they are bound by that decision and cannot, upon this appeal, bring up for review any question of fact or law determined by that order.

The effect of that order was to set aside the judgment which would otherwise have been a final determination of the issues in the action, both of fact and law. From its nature the order could not finally determine any of such issues; they could be determined only by a final judgment entered after the trial ordered by the Appellate Division. The defendants might be aggrieved by the order setting aside a determination of the issues in the action, but the order left open those issues for a new contest upon which the defendants might again be successful. They could appeal to this court from the order setting aside the judgment only by giving a stipulation that, upon affirmance, judgment absolute should be entered against them. The choice whether or not to waive the possible benefit of a new trial lay with them. Waiver of a new trial would give them the benefit of an immediate appeal, but refusal to waive a new trial would not deprive the defendants of the right to challenge any judgment entered upon that trial. In making that choice the defendants might reasonably anticipate that the trial judge would follow the ruling of the Appellate Division that the earlier judgment was erroneous, and that, upon a second appeal, the Appellate Division would not abandon its earlier ruling; nevertheless the second judgment entered after the new trial constitutes the sole final determination of every question of fact and law and is open to challenge as if there had been no earlier trial and judgment.

The driver of the automobile was in the general employ of the defendant Klein, who hired him and paid his wages,

and when Klein directed him to go to the studio of Paramount Publix Corporation, Klein intended to, and did, furnish to that corporation both the automobile and the services of the driver, for use in the business of the corporation. That corporation, in turn, furnished the automobile and the services of the driver for use in the business of the R.K.O. Studios. Each defendant maintains that the right to control the operation of the automobile at the time of the accident rested in some other defendant or defendants, and that responsibility for any negligence of the driver of the automobile is confined to the defendant who had the right to control its operation.

The common law rule of *respondeat superior* is based upon principles of agency. There the test is whether the wrongful act of the servant or employee was performed by one acting within the scope of his employment in the business of the principal. The field of responsibility has been enlarged by section 59 of the Vehicle and Traffic Law. " Liability is no longer dependent upon use or operation by a servant in the ' business ' of a master." It is dependent upon legal operation in that business " ' or otherwise ' with permission or consent." (*Fluegel* v. *Coudert*, 244 N. Y. 393, 394.) Klein employed the driver of the vehicle. At the time of the accident the driver was operating the motor vehicle with his permission and pursuant to his employer's direction to take instructions from Paramount Publix Corporation. We may assume that Klein did not intend to give Paramount Publix Corporation the right to use the vehicle for the dangerous purpose to which that company put the vehicle; but he did not place any restriction or condition upon his direction to the driver to obtain instructions from Paramount Publix Corporation and to proceed accordingly. Thus the driver at the time of the accident was " legally " operating the vehicle with the " permission " of the owner and the statute provides that for injuries resulting from negligence in such operation " in the business of such owner or *otherwise*," the owner is liable. (§ 59.)

The statute imposes in proper case a liability upon the owner of a motor vehicle not arising from the relation of master and servant. It leaves unchanged liability arising from that relation. There liability still depends upon proof that the negligence of the servant was in the " business of the master or principal." Difficulty in the application of the rules of agency at times arises where the servant is hired by one person and his services used in carrying out the purpose of another. The test for determining liability in such case " has been stated in various ways. The general principles applicable are comparatively simple. The trouble comes in applying those principles to the varying facts of particular cases." (*Ramsey* v. *New York Central R. R. Co.*, 269 N. Y. 219.)

Any attempt to reconcile all the decisions of this court would require analysis of the facts in each case. The underlying principles remain constant and in *Ramsey* v. *New York Central R. R. Co.* (*supra*), we said that " an examination of those cases will disclose that the court has consistently enforced the rule that ' the servant of one master to become, for the time being, the servant of another must pass out of the direction and control of the former into that of the latter,' " citing *Cannon* v. *Fargo* (221 N. Y. 321). Here we have a practical test, and practical rules have been evolved for its application. " He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details." (Shearman & Redfield on the Law of Negligence, quoted with approval in *Wyllie* v. *Palmer*, 137 N. Y. 248, 257, and in *Ramsey* v. *New York Central R. R. Co.*, *supra*, at p. 224.) " The rule now is that as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division."

(*Charles* v. *Barrett*, 233 N. Y. 127, 129.) In the absence of proof that the general employer has surrendered control completely, it must be presumed that his control continued. (*Bartolomeo* v. *Bennett Contracting Co.*, 245 N. Y. 66.)

Such tests and rules are necessary guide-posts for the proper application of the principles of the law of agency which underlie the rule of *respondeat superior*. They do not change these principles. Liability rests upon the principle that a principal is liable for the acts of his servant when the servant is acting in the business of the employer, within the scope of his employment and subject to the supreme control and right of direction by the employer. Confusion arises only in definition of what constitutes the " business " of the employer and what constitutes " control and right of direction." Instinct in every contract of employment is the right of the employer to direct the work of the employee and the duty of the employee to accept such direction. An agreement to perform work is not in true sense a contract of employment unless the workman is bound to submit to the will of the person for whom the work is to be done, in regard to all the details of the work. Right to specify the work to be done, even right to require that in specified matters the workman shall submit to the will and directions of the person for whom the work is to be performed, is not sufficient to create the relation of master and servant. So long as the workman retains, even with such limitations, the right to determine the details of the performance of the work, he is rather an independent contractor than a servant, and his work, though performed in furtherance of the " business " of another person, remains the " business " of the workman.

This same principle of the law of agency must be applied when the contract for work is not made with the workman but with a general employer of the workman. If the

general employer's contract is to furnish an employee who will do the specified work under the supreme direction and control of the person for whom the work is to be done, the workman becomes for the time being the servant of the person to whom he is furnished. The general employer's " business " in the matter does not include the doing of the work. He has no control of the manner in which it is performed, and the workman though hired by him does not act as his agent but as the agent of his employer for the time being to whose orders he must submit. Ordinarily a contract to lease an automobile with the services of a driver cannot be so construed. True, the parties in such case intend that the lessee may have the full use of the automobile, and by the express terms of the contract or by reasonable implication, the right is conferred upon the lessee to direct the driver where, when and how to drive the automobile; otherwise the purpose of the contract could not be fully carried out. None the less, so long as the general employer retains the right to direct and control in other details the operation of the automobile, the driver remains his servant rather than the servant of the lessee, and the driver's work, though in furtherance of the business of the lessee, is performed in the course of his original employment and, therefore, in the " business " of the general employer, who there is acting as a contractor who has agreed to do the work of driving through the agency of one of his servants, rather than as a contractor who has agreed to supply a servant to work in the " business " of another. Thus in the absence of proof that a lessor of an automobile has surrendered to the lessee complete control and direction of the driver even outside of those matters where direction is a usual detail of the anticipated use, the lessor and not the lessee is the principal of the driver and responsible as such for negligence in the operation of the automobile at least where the accident was not the result of directions given by the lessee. (Cf. *McLaughlin* v. *Audley Clarke Co.*, 251 N. Y. 507, and cases there cited.)

Here the circumstances are different. At the time of the accident the automobile was being put to a use, extraordinary and inherently dangerous in its nature. It could not be operated in such use without continuous and unquestioned control by the user. R.K.O. used the automobile, and through its employee did exercise such control. The general employer may not have anticipated that the automobile would be put to such use, and he may not have intended to part with complete control of its operation, but he made such use possible by his direction to the driver to take orders from the Paramount Publix Corporation. Regardless then of whether or not the lessee violated the terms of the contract of hiring, the lessor had effectively surrendered to that company complete control of the operation of the vehicle, and either that company or the R.K.O., which was using the vehicle, exercised complete control of the vehicle and its driver at the time of the accident.

The Paramount Publix Corporation placed the leased automobile and its driver at the disposal of R.K.O. Studios, Inc., for use in taking the moving picture. It did so pursuant to its agreement with R.K.O. " to furnish necessary personnel, equipment and materials for the above work." It did not agree to do any part of the work for R.K.O. through its agents or servants. It agreed only to loan its servants and equipment to R.K.O. for use in the business of R.K.O. It hired the automobile and driver from Klein to enable it to carry out its agreement. It surrendered to R.K.O. the same control over the driver which Klein had surrendered to it. Both the express terms of the contract and the manner in which it was carried out show conclusively that so far as concerns the taking of the picture, Paramount's " business " extended only to furnishing the personnel and equipment, and R.K.O. business began at that point. In that business R.K.O. had sole control and direction and is liable as principal for negligence of its servants. Paramount Publix has no such responsibility.

488

The judgments against Klein and R.K.O. Studios, Inc., should be affirmed, with costs; the judgment against Paramount Publix Corporation reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.