In re TEN EYCK CO., Inc.

No. 29421.

District Court, N. D. New York.

Sept. 17, 1941.

See, also, D.C., 40 F.Supp. 270.

Alfred W. Gray, of Niagara Falls, N. Y., and George J. Hatt, 2nd, of Albany, N. Y., for debtor.

Ralph L. Emmons, U. S. Atty., of Binghamton, N. Y., and Robert Leamy, Asst. U. S. Atty., of Oneonta, N. Y., for the United States.

COOPER, District Judge.

This is a motion by the debtor to expunge certain parts of claims and amended claims for taxes filed by Harry M. Hickey, as Collector of Internal Revenue for the 14th District of New York, and allowing the claims at the alleged correct amounts.

More specifically the motion is for an order reducing the claim filed by the Collector under the Federal Insurance Contributions Act from $2,261.94 to $942.70, and for an order reducing the claim filed by the Collector under the Federal Unemployment Tax Act from $2,324.88 to $813.83.

Since the service of papers on the above motion the Collector filed a further amended claim. The claim under the Federal Insurance Contributions Act is identical with the claim previously filed; but the claim under the Federal Unemployment Tax Act is increased by $6,834.38 of principal and additional $143.64 of interest, a total additional claim of $6,988.02 for the period from January 1, 1940, to November 26, 1940 (which latter date was the last day before the petition for arrangement was filed). This additional tax arises from the fact that no credit was given the debtor for contributions due and payable to the New York State Unemployment Insurance Fund for the said period last above mentioned.

The debtor moved in open Court to expunge this additional tax and the matter was adjourned one or more times and came on before the Court on June 21, 1941. The difference between $2,261.94, the amount claimed by the Collector, and $942.70, the amount admitted by the debtor to be due, on the first item above mentioned; and the difference between $2,324.88, the amount claimed by the Collector, and $813.83, the amount admitted by the debtor to be due on the second item first above mentioned, arises solely from the contention by the Collector that members of certain orchestras hired by the debtor were employees of the debtor.

The debtor denies that the members of these orchestras were its employees and that it is liable in any way for taxes or contributions on the wages of the members of the orchestras under the Two Federal Acts first above mentioned.

At the final hearing the debtor offered proof both oral and written on the employment of the orchestras in question.

The debtor offered the written contract dated June 2, 1937, between the debtor and Richard Mansfield for the employment of Mansfield's Orchestra for the summer season of 1937 beginning June 5, 1937, for the sum of $590.

The debtor also offered the written contract between itself and Herb Gordon for the services of Herb Gordon's orchestra to furnish dinner music to the patrons of debtor's hotel from 7:00 to 9:00 P. M. and from 10:00 P. M. to the closing each day of the week, except Sunday, beginning October 29, 1937, for the sum of $550 per week.

Herb Gordon, in the contract, guaranteed that the Herb Gordon orchestra of eleven pieces would provide satisfactory entertainment and that the debtor might terminate the contract at any time if the said orchestra was not satisfactory to the debtor.

The contract further provided: "The said "Director" is to have exclusive charge and direction of the persons employed in said orchestra in the performance of their work at said hotel, and is to have the sole right of employing and discharging the said persons so employed by him, and the said "Director" is to be solely responsible for the payment of the wages to said persons employed in said orchestra."

The "Director" also agreed to take out compensation insurance and pay the premium therefor and to hold the debtor harmless from all liability to maintain unemployment and old age insurance and other similar charges growing out of the employment by the "Director" of such employees as render service under the agreement (contract).

The debtor also offered the written contract with the Music Corporation of America, as agent, for the appearance of Nobby Barney's orchestra, called "Men of Note", consisting of himself and three other musicians for $236 per week, commencing October 20, 1939, and continuing indefinitely and subject to cancellation on two weeks notice.

The manager of the hotel testified that orchestras in other years here involved were hired under oral contracts at a lump sum payable weekly or monthly, as the case might be; that such lump sums were paid to the owner or leader of the orchestra as per the agreement; that under neither oral nor written contracts did he have any dealings whatever with the individual members of the orchestra; that he did not know their names; that he never hired or discharged any member of such orchestra; never paid them any money whatever, that he exercised no control whatever over them or the music they should play, never talked with any of them about music to be played; or about anything

·else connected with their work as members of the orchestra.

The proof also showed that while there were broadcasting facilities at the hotel, the orchestra leaders made all arrangements with the station for broadcasts and the debtor hotel had nothing to do with what was to be broadcast or the time of the broadcast.

The Collector offered no testimony or ·other evidence whatever.

The debtor strenuously contends that the facts shown without dispute admit of only ·one conclusion, viz., that the orchestra ·owner or leader was an independent contractor; that the members of the orchestras were his employees, hired, discharged, and paid by him; that under no reasonable ·construction of law were the members ·of the orchestras employees of the debtor. Therefore, says the debtor, it is not liable for any taxes or contributions under ·either of the two Federal Acts in question.

Section 1400, Title 26 U.S.C.A. Int.Rev. Code, imposes a tax on employees equal to one per cent of their wages as defined in Section 1426(a) with respect to employment as defined in Section 1426(b).

Section 1410 imposes a similar tax on employers.

Section 1426(a) defines "wages" as meaning all remuneration for employment with certain exceptions not material here.

Section 1426(b) defines "employment" to mean "any service performed * * * by an employee for the person employing him * * *."

Subchapter C of Chapter 9 of the Internal Revenue Code, formerly Title IX of the Social Security Act, Section 1600 of Title 26 U.S.C.A. Int.Rev.Code, imposes an excise tax upon every employer, as defined in Section 1607(a), of eight or more persons. Sec. 1607(c) defines "employment" to mean "any service performed * * * by an employee for the person employing him."

The distinction between an employee and an individual contractor depends upon whether he undertakes to achieve an agreed result and to accept the directions of the employer as to the manner in which the result shall be accomplished, or agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used.

"This distinction between a servant and an individual contractor is the existence of a right of control over the agent in respect to the manner in which his work is to be done. A servant is an agent who works under the supervision and direction of his employer; an individual contractor is a person engaged to do certain work, but to exercise his own discretion as to the mode and time of doing it * * * he is bound by his contract but not by his employer's orders." Salmond on the Law of Torts, 9th Edition, Page 90; Irwin v. Klein, 271 N. Y. 477, 485, 3 N.E.2d 601; Pollack on the Law of Torts, 14th Edition, Page 64.

The foregoing conception, evolved by a long line of tort cases and authorities, has been applied in cases arising under the Workmen's Compensation Act N.Y. McK.Consol.Laws, c. 67. Matter of Pierce v. Bowen, 247 N.Y. 305, 160 N.E. 379; Matter of Glielmi v. Netherland Dairy Company, 254 N.Y. 60, 171 N.E. 906.

The same rule has also been applied to cases under the Unemployment Insurance Law, Labor Law N.Y. § 500 et seq. Matter of Scatola, 282 N.Y. 689, 26 N. E.2d 815; Matter of Levine, 283 N.Y. 577, 27 N.E.2d 439.

A case analogous to the case at bar, relative to the liability of a hotel to a member of an orchestra under the New York State Unemployment Insurance Act, is the case of Matter of Shirley Brown, 260 App.Div. 972, 23 N.Y.S.2d 330, 331. In that case the claimant was a vocalist, a member of the Dick Stabile Orchestra, which was engaged by the Hotel Statler Company, Inc., to play during certain hours. The Appellate Division, by a unanimous Court, reversed the decision of the Unemployment Insurance Appeal Board and said: "The issue presented here is whether Dick Stabile was an independent contractor and employer of claimant, or whether Dick Stabile and each and every individual member of his orchestra were employees of appellant. The Unemployment Insurance Referee and the Appeal Board held that claimant was an employee of the appellant. Clearly, she was not such an employee but was an employee of Dick Stabile, an independent contractor, for a certain period of time. Appellant did not hire the individual members of the orchestra, nor did it enter into a contract with Stabile, an agent. Through a booking agency appellant contracted for

the services of an orchestra, the members of which were the employees of Dick Stabile. This case is readily distinguishable from the case of Matter of Rogavin, 259 App.Div. 774, 18 N.Y.S.2d 302, and Matter of Ajello, 259 App.Div. 949, 19 N.Y.S.2d 886."

The Commissioner of Internal Revenue had before him a situation almost exactly like that of the case at bar, having to do with the member of the Joaquin Gill orchestra, employed by the Dayton Biltmore Hotel of Dayton, Ohio. In that case the contract was entered into between the Hotel, Gill, the leader of the orchestra, and the Music Corporation of America, using the Music Corporation of America form of contract. In such contract Gill and his orchestra are referred to as the "attraction" and the hotel was referred to as employer. But the Commissioner went behind the reference in the contract to the hotel as employer for the actual facts. The Commissioner, in his opinion, points out the distinction between the Gill case and the former ruling No. 4651 of the Department, holding the purchaser of the music to be an employer, and in doing so uses these words: "Looking to the relationships between the Dayton Biltmore Hotel and Joaquin Gill and the members of the orchestra, as disclosed by the written contract and the other submitted evidence it appears that Joaquin Gill and his orchestra 'holds itself out to the public as a permanent business organization and that the personnel from engagement to engagement remains fixed to a substantial degree'. The evidence indicates that the Dayton Biltmore Hotel, in engaging for the services of 'Joaquin Gill and his orchestra' was contracting for a complete music unit rather than engaging Joaquin Gill to serve as a 'contractor' within the meaning of S. S. T. in mimeograph Coll. No. 4651 to assemble and direct an orchestra on behalf of the Hotel."

A similar decision by the Treasury Department may be found in S. S. T. 375, dealing with the orchestra leaders contracting with various hotels and other persons who are so called "purchasers", and, as here, the contract fixed the dates, location and hours of play of the engagement; the contracts are signed by the orchestra leader or his representative, the members of the orchestra are not named, the remuneration is paid to the leader in a lump sum, the "purchaser" (hotel) engages a complete musical unit whose members have been engaged and rehearsed by the orchestra leader upon whom the "purchaser" relies to furnish an orchestra capable of producing the type and quality of music desired. The decision concludes with these words: "In view of the foregoing it is held that the 'purchasers' who engaged the services of the orchestras under such contracts were not employers of B. and the members of his orchestra within the meaning of subchapters A. and C., Chapter 9, of the Internal Revenue Code (Formerly titles 8 and 9 of the Social Security Act), as that as to those engagements B. (the leader of the orchestra) was an individual contractor and the members of the orchestra were his employees."

The collector offered no authorities to the contrary, and cites but one case, the case of Griff Williams v. United States of America, D.C., 38 F.Supp. 536, but this Griff Williams was the leader of the orchestra, and he paid taxes under the Social Security Act and sued to recover them. The Court in its opinion makes no reference to the departmental decisions above referred to. It sets up two contracts with the Music Corporation of America, but in that case the Court found that the establishments for which Griff Williams and his orchestra performed their musical entertainment exercised control in twenty-one different ways over the orchestra and its members. The Court held that Griff Williams was not an employer. This case has no close analogy and cannot be followed here.

The conclusion therefore must be that the hotel was not the employer of the members of the orchestra and is not liable for the taxes sought to be collected by the Collector of this district.

The debtor also urges that if the court should find that the members of the orchestra were employees of the debtor and that debtor should have deducted 1% of their wages, the employees portion of the tax does not constitute a debt under the Federal Insurance Contributions Act so as to be entitled to priority of payment.

In view of the decision which this Court has reached that the members of the orchestra were not employees of the debtor, it is not necessary to decide such contention.

If it were to be decided, the cited case in the 2nd Circuit Court of Appeals, Matter of Independent Auto Forwarding Corp.,

118 F.2d 537, 45 A.B.R., N.S., 230, seems conclusive.

The Collector's amended claim under the Federal Unemployment Tax Act is as follows:

| | | |
|---|---|---|
| 1937 (amended) | $ | 47.63 |
| 1938 (amended) | | 47.03 |
| 1939 (additional) | | 1,261.28 |
| 1940 (per taxpayer's return), | | 813.83 |
| 1940 (additional) | | 6,592.50 |
| | | 9,031.02 |
| Interest, | | 281.88 |
| | | $9,312.90 |

Upon the hearing on June 21st, there was offered in evidence proof of credit issued by the New York State Department of Labor, Division of Placement and Unemployment Insurance, showing the payment by the debtor into the New York State Unemployment Insurance Fund for the tax due for the calendar year 1939 of the sum of $8,527.18 in two payments; $716.10 amount paid before January 31, 1940, and $7,811.08, paid after January 31, 1940. The gross federal tax for the said year, as assessed by the Collector of Internal Revenue under the Federal Unemployment Tax Act, is $8,796.91. On this the debtor is entitled to a credit up to 90% thereof, to wit: $7,917.22, and leaving due $879.70, which the debtor has paid to the Collector. This would seem to dispose of the Collector's claim for additional tax for the year 1939 of $1,261.28, together with interest thereon amounting to $97.69.

■ The Collector's claim shows that he has likewise assessed an additional tax for the year 1940 of $6592.50, and interest, under the Federal Unemployment Tax Act. But this tax did not become due at any time prior to the time the debtor came into court in this arrangement proceeding. By reason of being in this Court in the arrangement proceeding prior to the time fixed in the act when the debtor could no longer get credit for payments made to the State Unemployment Insurance Fund if it were not in Court, the debtor preserved his right to get credit for the Federal Unemployment Tax paid to the State when paid in the arrangement proceedings. This is specifically contained in Section 1601(a) (3) of the Federal Unemployment Tax Act.

■ The Collector apparently arrived at the sum $6,592.50 additional tax for 1940 because of the fact that he erroneously credited the debtor with $731.95 paid by it to the New York State Unemployment Insurance Fund subsequent to the filing of the arrangement petition. This check represented contribution paid for the period commencing November 27, 1940, the date of the filing of the arrangement proceeding, and December 31, 1940. This payment, therefore, has no bearing on the return filed by the debtor for the calendar year 1940, down to and including November 26, 1940, which period is covered by the Collector's claim.

But the Collector has not credited the debtor with $7,324.54, representing 90% of the Federal Tax to which it is or will be entitled to credit for contribution to be paid to the New York State Unemployment Insurance Fund, pursuant to the plan or arrangement in the arrangement proceeding, which plan provides for the payment in full in case of all taxes as allowed and determined by this Court, to which credit debtor will be entitled irrespective of the date of payment, all pursuant to the said Section 1601 aforesaid.

It follows, therefore, that the Collector's claim is premature, cannot be allowed while the arrangement proceedings are pending, and the $6,592 item is stricken out in toto, together with any interest, if any, included in the claim.

It follows, therefore, that the debtor's motion should be granted and that this Court should determine, and does determine, that the debtor is indebted to the Collector of Internal Revenue under the Federal Unemployment Tax Act for $813.83 only, together with interest; and under the Federal Insurance Contributions Act to $942.70 and interest. All other items in the tax claims filed by the Collector are stricken out; reserving to the Collector the right to file supplementary claim for the full amount of tax for the year 1940 if the arrangement proceeding should not be carried out, or if the amount due the State of New York Unemployment Insurance Fund from January 1, 1940, to November 26, 1940, is not paid and these proceedings are abandoned or dismissed or the case goes over into bankruptcy.