### (December 29, 1947.)

ARTHUR BURTON, Appellant, *v.* AMERICAN BRIDGE Co., Respondent, et al., Defendants.

MEMORANDUM BY THE COURT. Action to recover damages for personal injuries arising out of the negligent operation of a crane. Plaintiff had a verdict against the American Bridge Company. On motion the verdict was set aside and a reserved motion to dismiss the complaint was granted. Plaintiff appealed from the order setting aside the verdict and dismissing the complaint and from the judgment entered thereon.

"The identity of the master at the time of the negligent act charged must always be determined with reference to the particular facts of each case." (*Hallett* v. *New York Central & H. R. R. R. Co.*, 167 N. Y. 543, 547.)

The record discloses that defendant American Bridge Company did not undertake to remove the posts or post which were involved in the accident and which the Arthur A. Johnson Company, a subcontractor, was under contract to remove. It discloses that the American Bridge Company loaned the crane and its operator to the Johnson Company and surrendered all dominion and control thereof and that the latter assumed complete control for the purpose of doing its own work. It also discloses that the American Bridge Company had no interest in or concern with, and was not convenienced or favorably affected by the doing of that work. Under these circumstances the operator of the crane became the *ad hoc* servant of the Johnson Company, and the American Bridge Company may not be cast in liability for his negligence while acting for and on behalf of the Johnson Company. The factual base for nonliability on the part of the American Bridge Company is stronger here than was the situation in respect of the Paramount Publix Corporation in *Irwin* v. *Klein* (271 N. Y. 477). That case required a dismissal of the complaint herein as to the American Bridge Company. In *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345, 349) it is stated: "A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negligence. But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants

of the person with whom he thus contracts, and the latter is not liable for their negligence." (See, also, *McInerney* v. *Delaware & Hudson Canal Co.*, 151 N. Y. 411, 415–416.)

Order and judgment, insofar as appealed from, affirmed, with costs. The findings of fact implicit in the verdict of the jury are affirmed.

JOHNSTON, J. (dissenting). I dissent and vote to reverse the order and judgment, and to deny the motion to set aside the verdict. It will be necessary briefly to state the facts.

In August, 1946, Abraham & Straus, Inc., owner of a department store in Brooklyn, engaged a general contractor to do extensive alteration work. The general contractor engaged, among others, the two subcontractors with whom we are concerned. One was the respondent American Bridge Company (hereinafter called the Bridge Company), to do the steel work, and the other was plaintiff's employer, the Arthur A. Johnson Company (hereinafter called Johnson), to do the shoring work. In the course of its work, the Bridge Company rented a crane from one Wagner and agreed to pay $75 a day for its use for as long a period as the Bridge Company needed it. A Bridge Company employee drove the crane from Wagner's yard to the site of the work on August 19, 1946, and returned it to Wagner's yard on August 23, 1946. If repairs to the crane were needed during that interval, the Bridge Company was to make them. It was also required to pay for the fuel and oil. Two men were necessary to operate the crane, an engineer-operator and an oiler. The Bridge Company employed Kemp, the operator, and Cacavio, the oiler. It also paid them their wages and carried them on its social security and workmen's compensation rolls. The Bridge Company only had the right to give them orders and discharge them.

On August 23, 1946, after the Bridge Company had completed the work for which it used the crane that day, it loaned the crane and its operator to Johnson, at the latter's request, in order to help Johnson in the removal of some posts, which were then situated in a hollow about twelve feet below the level of the sidewalk, and which it was the duty of Johnson to remove. Kemp and Cacavio then moved the crane about sixty feet to the place where it was needed to lift the posts. One post was removed and placed on the roadway. It was while the second post was being removed that the plaintiff was injured. A sling hanging from the crane was made fast to the post. Plaintiff — Johnson's employee — who was standing on the wall at the street level, then signaled Kemp to lift the post. The signaling was necessary so that, in raising the post it would not hit the gas and water pipes in the excavation. After the post was raised about six feet, plaintiff "got some dirt in his eye" and stepped inside the building proper. One Dundon — plaintiff's coemployee — then gave the signals to Kemp, who raised the post slowly until it was at or about the street level. There was proof that "When a load * * * comes to the level where * * * the engineer * * * can see the load on his own" the signaling ceases and the engineer "usually takes care of it." After the signaling was completed and while Kemp was about to swing the post across the sidewalk and place it on the roadway, Kemp raced the mechanism of the crane, raising the post so that the upper end of it hit the boom of the crane, causing the lower end of the post to kick back and strike plaintiff — who had returned to the wall — precipitating him into the shaftway. Kemp continued to raise the post until the sling broke and the post fell into the shaftway, injuring plaintiff.

The jury rendered a verdict for $82,500 in plaintiff's favor. Thereafter the court set aside the verdict and granted a reserved motion made at the close of the case to dismiss the complaint, holding as a matter of law that Kemp at the time of the accident was the *ad hoc* employee of Johnson. Respondent does not dispute that Kemp's negligence in the operation of the crane was the proximate cause of plaintiff's injuries and that plaintiff was free from contributory negligence. Therefore, this appeal presents the single question: Did the court err in holding as a matter of law that Kemp was the employee of Johnson at the time of the accident?

Johnson had no power to discharge Kemp, nor to direct his manner of operating the crane and have its direction obeyed if Kemp thought the direction would be injurious to the crane. Kemp knew the safe way and the unsafe way to operate the crane. Johnson had no control over the crane or Kemp except that by signals Johnson's employees directed the hoisting of the posts until they reached the street level. Beyond this Johnson was not allowed to interfere with its operation. Johnson had no control over Kemp as to his method of operating the crane, and it was the manner of operating it that caused the injury. It was after Johnson's employees had completed signaling, and while Kemp was operating the crane to swing the post over on to the roadway, that the accident happened. Over the act which caused the injury Johnson had no control. The work of operating the crane was that of the Bridge Company. Under these circumstances, whether Kemp was the servant of the Bridge Company or of Johnson at the time of the accident was a question of fact which was properly submitted to and decided by the jury.

In *Ramsey* v. *New York Central R. R. Co.* (269 N. Y. 219) the court said (pp. 223–224): "The determination of the question of who was the master at a particular time is sometimes a question of law. More often it presents a question of fact to be decided by a jury under instructions from the court upon the legal principles applicable. The test for determining who is liable for the negligent acts of a servant, the general master or one to whom the servant has been loaned or hired, has been stated in various ways. The general principles applicable are comparatively simple. The trouble comes in applying those principles to the varying facts of particular cases."

The test by which it is determined who was the master of the negligent servant at the time of the accident was set forth in *Wyllie* v. *Palmer* (137 N. Y. 248, 257), where the court quoted with approval from Shearman and Redfield on the Law of Negligence (Vol. 1, 4th ed., § 160, pp. 267–268) as follows: "He is to be deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details."

There are, therefore, two elements over which control by the special employer must be exercised in order to render him liable for the negligent act of the servant: (1) control over the ultimate result of the servant's work; (2) control over the details of the work. In the absence of proof that the general employer has surrendered complete control over both of these elements, it must be presumed that his control continues. (*Charles* v. *Barrett*, 233 N. Y. 127; *Bartolomeo* v. *Bennett Contracting Co.*, 245 N. Y. 66.) Division of command, that is, control by the general employer over one of these elements and control by the special employer over the other, is insufficient to constitute the employee the servant of the special employer. (*Charles* v. *Barrett, supra.*) So in *Kristiansen* v. *Wagner's Steel Erectors, Inc.* (295 N. Y. 668) and *Bartolomeo*

v. *Bennett Contracting Co.* (*supra*), where the instrumentality, the negligent operation of which by the servant caused the accident, was used in furtherance of the work of the special employer but the special employer had no control over the manner of operation of the instrumentality, it was held to be a question of fact whether the servant was the employee of the general or the special employer. In the case at bar, although Kemp was operating the crane at the time of the accident with the ultimate result of furthering Johnson's work in removing the posts, Kemp represented the Bridge Company's will in the details of the work, i.e., in the manner of the operation of the crane.

Respondent, without citation of authority, attempts to draw a distinction between servants and equipment loaned and servants and equipment let. The same rule applies to both. That the Bridge Company loaned the crane and Kemp to Johnson rather than contracted with Johnson for the use of the crane and the services of Kemp makes no difference in the test to be applied. (*Ramsey* v. *New York Central R. R. Co.*, *supra*; *McNamara* v. *Leipzig*, 227 N. Y. 291; *Cannon* v. *Fargo*, 222 N. Y. 321; *Cowell* v. *Saperston*, 149 App. Div. 373, affd. 208 N. Y. 619.) In *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345), cited by the majority, the servant was loaned by the general to the special employer to drive the truck of the special employer. In the case at bar both the crane and the operator were loaned to Johnson.

In *Ramsey* v. *New York Central R. R. Co.* (269 N. Y. 219, *supra*) the plaintiff who was injured was an employee of the Kenmore Company. Defendant railroad loaned a crane and its operator to Kenmore, whose duty it was to unload a railroad car. While Kenmore was unloading a "cell back" from the car, the accident happened. The operator of the crane was a regular employee of the railroad company and his wages were paid by it. The question was whether, at the time of the accident, the operator was the employee of the railroad or of Kenmore. Although at the time of the accident the crane was being used in furtherance of Kenmore's business, it was held that the operator was the servant of the railroad, because the accident was due to the negligent operation of the crane, and the direction and control of the crane and its operation remained with the railroad.

A case involving similar facts is *Rockwell* v. *Grand Trunk W. Ry. Co.* (264 Mich. 626). There plaintiff was in the trucking business. On the day of the accident he was employed by a consignee of steel beams to unload them from a railroad car in defendant's yard and haul them to the site where a bridge was to be constructed. Defendant loaned plaintiff a crane and an operator to assist him in unloading the beams. The negligent operation of the crane resulted in injury to the plaintiff. Although the majority of the court held that the operator was the *ad hoc* servant of the consignee, Judge HUBBS, in *Ramsey* v. *New York Central R. R. Co.* (*supra*, p. 226), stated that the reasoning of the dissenting opinion "impresses us as stating the rule more in accord with our own decisions." In that dissenting opinion, McDONALD, Ch. J., stated (pp. 631–632): "Whose work the operator was doing is an important test in determining whose servant he was, but it is not the only test, for though he was doing work for the plaintiff he was not the plaintiff's servant unless plaintiff had the exclusive right to direct and control him in doing the work. A person may loan a servant to another to do a particular work, but unless he puts the servant under the direction and control of the other in the performance of that work, he remains liable for his negligent acts. The question, then, is With whom was the power of control? It is clear that the plaintiff had no control

over the servant as to his method of operating the crane, and it was the manner of operating it that caused the injury. The only control the plaintiff had was to tell the operator in which direction the beams were to be lifted and where they were to be placed. He could not tell him how to operate the crane. The operator did that according to the directions he had received from the defendant, his general master. Over the act which caused the injury the plaintiff had no control. The work of operating the crane was the defendant's work."

In the case at bar, the fact that Kemp was doing Johnson's work was an important test in determining whose servant he was, but it was not the only test. Kemp was not Johnson's servant unless Johnson had the exclusive right to direct and control him in the manner of operating the crane. The proof is that Johnson had no such right. That Kemp received signals from Johnson's employees while the post was in the excavation — so it would not "hit against" the gas and water pipes — and until the post was raised to a point level with the street is not sufficient to make him Johnson's servant. (*Kristiansen* v. *Wagner's Steel Erectors, Inc.*, 295 N. Y. 668, *supra*; *Johnson* v. *Netherlands Amer. S. Nav. Co.*, 132 N. Y. 576.)

*Irwin* v. *Klein* (271 N. Y. 477), invoked by the Bridge Company and cited by the majority, is not to the contrary. The Bridge Company in the case at bar likens its position to that of defendant Paramount Publix Corporation in the *Irwin* case (*supra*). There is no similarity. There Paramount surrendered to R. K. O. Studios complete control over the automobile, its driver, and the manner of its operation. For the purpose of making a movie, R. K. O. directed the driver to operate the automobile in such a manner as to make it appear that the car was avoiding signal lights and "going right straight through disregarding everything." Plaintiff's injuries resulted from such operation. In the case at bar the Bridge Company did not surrender to Johnson complete control over the operation of the crane. The principles enunciated in the *Irwin* case are directly applicable here. There Judge LEHMAN, at page 486, stated: "* * * * so long as the general employer retains the right to direct and control in other details the operation of the automobile, the driver remains his servant rather than the servant of the lessee, and the driver's work, *though in furtherance of the business of the lessee*, is performed in the course of his original employment and, therefore, in the 'business' of the general employer, who there is acting as a contractor who has agreed to do the work of driving through the agency of one of his servants, rather than as a contractor who has agreed to supply a servant to work in the 'business' of another. Thus in the absence of proof that a lessor of an automobile has surrendered to the lessee complete control and direction of the driver even outside of those matters where direction is a usual detail of the anticipated use, the lessor and not the lessee is the principal of the driver and responsible as such for negligence in the operation of the automobile at least where the accident was not the result of directions given by the lessee." (Italics mine.)

In the case at bar the accident was not the result of directions given by Johnson, but was the result of the negligent way in which the crane was operated by Kemp after the signaling by Johnson's employees ended. Under the doctrine of the *Irwin* case (*supra*), although the crane was operated at the time of the accident in furtherance of the business of Johnson in removing the post, Kemp's work in operating the crane was in the "business" of the Bridge Company, whose business it was to operate the crane carefully.

For the reasons stated, I believe there was a question of fact as to whose servant Kemp was at the time of the accident.

The order and judgment should be reversed and the motion denied.

Hagarty, Acting P. J., Carswell and Adel, JJ., concur in Memorandum by the Court; Johnston, J., dissents and votes to reverse the order and judgment and to deny the motion to set aside the verdict and to dismiss the complaint, with an opinion, in which Sneed, J., concurs.

Order and judgment, insofar as appealed from, affirmed, with costs. The findings of fact implicit in the verdict of the jury are affirmed.