In the Matter of FULTON SHIPOPERATORS P & I SERVICE, INC., Appellant. EDWARD CORSI, as Industrial Commissioner, Respondent.

In the Matter of FULTON P & I UNDERWRITING AGENCY, INC., Appellant. EDWARD CORSI, as Industrial Commissioner, Respondent.

Third Department, May 5, 1948.

*Bigham, Englar, Jones & Houston,* attorneys (*Henry J. Bogatko* and *William M. Keegan* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General,* and *Francis R. Curran, Assistant Attorney-General,* of counsel), for Industrial Commissioner, respondent.

FOSTER, J. These are appeals by alleged employers from decisions of the Unemployment Insurance Appeal Board which affirmed determinations of a referee and the Industrial Commissioner that appellants were employers subject to the provisions of the Unemployment Insurance Law. The corporate setup which gave rise to the controversy is as follows:

R. A. Fulton & Co., Inc. (hereafter called Fulton Co.), is a domestic stock corporation engaged in the maritime insurance business as a broker, agent and adjuster. It was incorporated January 2, 1924, and all of its stock is owned by R. A. Fulton, who is also the president thereof. It is not a party to this appeal, but it must be considered nevertheless because it is contended by appellant that all of the employees involved in this controversy were the employees of this corporation.

Fulton P & I Underwriting Agency, Inc. (hereafter called Agency, Inc.), one of the appellants here, is a domestic stock corporation, incorporated November 9, 1933. Mr. Fulton is also president of this corporation and owns all of its stock. Its business was to act as a central agent for a syndicate of insurance companies engaged in issuing policies of maritime insurance, and also to service such policies. Apparently the reason for its existence was the manner in which maritime insurance business was carried on. One policy of insurance was issued in which all participating companies were named and the amount of their interest specified. A central agent was thereafter designated to issue and service such policies, and in order that any member of the syndicate might ascertain at any time the amount of its interests in the insurance so issued, the names of the vessels, premiums collected or due,

losses claimed or paid and its proportion thereof, separate records were required to be kept. An agreement to manage this corporation was entered into between Fulton Co. and Agency, Inc., under the terms of which the latter corporation agreed to reimburse Fulton Co. for all expenses paid in connection with such management. This agreement was first made orally and later its terms were reduced to writing. Under its power of management Fulton Co. directed certain of its employees from time to time to do the necessary work in connection with the servicing of syndicate policies for Agency, Inc. The latter corporation received commissions from the syndicate for its service in connection with issuing and taking care of policies.

After the commencement of war in 1941, the United States Government requisitioned and took over the operation of all vessels, except tugs and other harbor craft, and a new syndicate was formed to write policies on the vessels so requisitioned. Apparently this came about because the Government was not equipped to handle the voluminous insurance rendered necessary by such requisitions. In any event a syndicate was formed by several insurance companies to take over the insurance business in connection with such vessels that were previously insured through Agency, Inc. To act as a central agent and to service this new type of business a corporation known as Fulton Shipoperators P & I Service, Inc. (hereafter called Shipoperators) was incorporated on November 28, 1942. It operated in the same manner as Agency, Inc., except that no broker's license was obtained. It received a fee for this service based upon tonnage as determined by the United States Government. Mr. Fulton individually owned 75% of the shares of this corporation and was also its president.

An agreement to manage this corporation was also made by Fulton Co., and certain employees of the latter were directed to do the necessary work in connection with the service of the policies issued in behalf of the syndicate by this new corporation.

All three of the corporations named were housed in common offices at No. 99 John Street, New York City. Approximately twenty-five people were employed in these offices.

On October 24, 1945, the Industrial Commissioner made a determination that Shipoperators was a covered employer from December 1, 1942; and on October 25, 1945, a similar determination was made with respect to Agency, Inc., determining coverage from January 1, 1936. These two corporations requested hearings as to these matters, contending that they

had no individuals in their employment and that all of the persons who performed services in their behalf were employees of Fulton Co., an independent contractor. After a hearing had been held the referee sustained the determinations previously made, basing his decision on the ground that services performed by Fulton Co. were performed as an agent acting in behalf of Agency, Inc., and Shipoperators. Appeals were thereafter made to the Unemployment Insurance Appeal Board which rendered a separate decision with respect to each appeal and affirmed the decision of the referee in each instance. The appeals were later consolidated by stipulation and are presented as one issue on the record before us.

It seems to be the position of the respondent that since the board has found as a fact that the appellants were covered employers that this decision is final. We do not think, however, that there is any question of fact whatever in the case. There appears to be no dispute at all as to any of the facts relative to the manner in which the corporations were operated, the work that was done by each, and the manner in which employees were hired, discharged and directed. All applications for employment were made to Fulton Co. The personnel department of this corporation hired, discharged, directed, controlled and transferred employees from one job to another. There is no evidence whatever that it ever relinquished such control. Moreover it paid all salaries, withholding, social security and unemployment insurance taxes. It had agreements with both appellant corporations in which it agreed to manage them. Such undisputed facts would seem to make it clear that those who performed services for appellants were employees of Fulton Co., an independent contractor with whom appellants contracted to act as manager for them. The proof does not show that either of the appellant corporations ever had an exclusive service of any of the employees of Fulton Co., who were assigned from time to time to do work for either of appellants.

We find no authority either in law or in fact for the assertion of the referee that a contract of hire implied, if not expressed, existed between those who rendered service to the appellant corporations, and such corporation, because Mr. Fulton was an officer and director in each of the appellant corporations. The latter were separate entities and had a right to make such managerial contracts as the officers and directors of each saw fit to make. We know of no law that makes it illegal for one corporation to accept the services of employees of an independent corporation for purely routine work, such as servicing

insurance policies. The referee's conclusion that there were separate contracts of employment with each corporation every time an employee of Fulton Co. was directed to perform some service for such corporation is not in conformity to authority. The rule has long been that so long as the employee is furthering the business of his general employer by service rendered to another, there will be no inference of a new relationship unless command has been surrendered, and no inference of its surrender can be drawn from the mere fact of its division (*Irwin* v. *Klein,* 271 N. Y. 477). We think under the circumstances that it was an error of law not to apply the later part of the provisions of subdivision 3 of section 560 of the Labor Law which reads as follows: " 3. Independent enterprises. In determining whether an employer is liable for contributions and for what contributions he is liable under this article, such employer shall, whenever he contracts with any person for any work which is part of such employer's usual trade, occupation, profession, or enterprise, be deemed to employ all employees employed by such person for such work, and he alone shall be liable for the contributions hereunder with respect to wages paid to such employees for such work, *unless such person performs work or is in fact actually available to perform work for anyone who may wish to contract with him and is also found to be engaged in an independently established trade, business, profession, or enterprise.*" (Italics supplied.)

The record shows clearly that Fulton Co. was licensed to do anything in the insurance business. It had both brokerage and agency licenses, and was actually available to perform services for anyone who wished to contract with it. It was an independently established business long before appellants were organized, engaged in many phases of insurance business, *including the management of other companies.*

It should be noted in conclusion that unemployment insurance taxes for the benefit of all the employees involved have been fully paid by Fulton Co., and no question has been raised in that regard. We may also add that while we have no concern with accounting mechanics of the situation, it appears to us that the determinations as made by the board would render a relatively simple accounting procedure infinitely more complex.

The decision of the Unemployment Insurance Appeal Board and of the referee should be reversed, with $50 costs.

HILL, P. J., HEFFERNAN, BREWSTER and RUSSELL, JJ., concur.

Decision of the Unemployment Insurance Appeal Board and the referee reversed, on the law, with $50 costs.