Magdalene Wawrzonek, as Administrator of the Estate of Louis Wawrzonek, Deceased, Appellant and Respondent, *v.* Central Hudson Gas and Electric Corporation, Respondent and Appellant.

Argued December 10, 1937; decided January 11, 1938.

*William A. Mulvey* for plaintiff, appellant and respondent. The Northeast Company bore the relation of independent contractor to the defendant. (*Brown* v. *Munn Piano Co.*, 172 App. Div. 372; *Petrie* v. *Small Realty Co.*, 141 App. Div. 681; *McMullen* v. *City of New York*, 104 App. Div. 337; *Hexamer* v. *Webb*, 101 N. Y. 377; *Hawke* v. *Brown*, 28 App. Div. 37; *Linnehan* v. *Rollins*, 137 Mass. 123; *Tuttle* v. *Embury-Martin Co.*, 192 Mich. 385; *Aisenberg* v. *Adams Co.*, 95 Conn. 419; *Bristol & G. Co.* v. *Industrial Comm.*, 292 Ill. 16; *Columbia School Supply Co.* v. *Lewis*, 65 Ind. App. 339; *Root* v. *Shadbolt*, 195 Iowa, 1225; *Moore* v. *Wills, Inc.*, 250 N. Y. 426; *Losee* v. *Paramount Hotel Corp.*, 127 Misc. Rep. 530.) The deceased was neither the general nor special employee of the defendant. (*Corning* v. *Walker*, 100 N. Y. 547; *Densby* v. *Bartlett*, 318 Ill. 616; *Butler* v. *Townsend*, 126 N. Y. 105; *Mackey* v. *City of New York*, 193 App. Div. 535; *Matter of Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97; *Carlisle* v. *Norris*, 215 N. Y. 400; *Davis* v. *Martin*, 111 App. Div. 411; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Charles* v. *Barrett*, 233 N. Y. 127; *Murray* v. *Union Ry. Co.*, 229 N. Y. 110; *Matter of Beach* v. *Velzy*, 238 N. Y. 100; *Latini* v. *Zavodnick*, 254 N. Y. 346; *Matter of Dutcher* v. *Victoria Paper Mills Co.*, 219 App. Div. 541.) If the evidence tending to show employment is conflicting, a question is presented for the jury, and the jury's answer to that question should have been accepted by the Appellate Division.

(*Murray* v. *Union Ry. Co.*, 229 N. Y. 110; *Stone* v. *Western Transp. Co.*, 38 N. Y. 240; *Zorn* v. *Pendleton*, 163 App. Div. 33; *Diel* v. *Zeltner Brewing Co.*, 30 App. Div. 291; *Spitzer* v. *Nassau Newspaper Delivery Exp. Co.*, 20 Misc. Rep. 327.) The defendant is liable to the plaintiff for its negligence in causing the death of plaintiff's intestate. (*Burke* v. *Ireland*, 26 App. Div. 487; *Parsan* v. *Johnson*, 208 N. Y. 337; *Miller* v. *City of Rochester*, 196 App. Div. 853; *Schmidt* v. *Stern*, 119 Misc. Rep. 529; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; *Ramsey* v. *N. Y. C. R. R. Co.*, 269 N. Y. 219; *Indemaur* v. *Dames*, 1 C. P. 274; *Matter of DeNoyer* v. *Cavanaugh*, 221 N. Y. 273.)

*Desmond T. Barry* and *Dickinson S. Talley* for defendant, respondent and appellant. The deceased was an employee of the defendant. (*Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Lee* v. *Cranford Co.*, 230 N. Y. 618; *Matter of Nolan* v. *Cranford Co.*, 4 State Dept. Rep. 337; 171 App. Div. 959; 219 N. Y. 581; *Matter of Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97.) The evidence complies with the rules of special employment. (*Charles* v. *Barrett*, 233 N. Y. 127; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Lee* v. *Cranford Co.*, 230 N. Y. 618.) The deceased considered himself an employee of the defendant. (*Murray* v. *Union Ry. Co.*, 229 N. Y. 110.)

FINCH, J. The deceased was killed by a conveyor which tipped over and crushed him while working as one of a gang engaged in placing oxide in a purifying box used by the defendant Central Hudson Gas and Electric Corporation in the manufacture of illuminating gas. The administratrix of the deceased sued defendant in negligence and recovered a verdict in the amount of $12,000.

Four questions were submitted to the jury and answered as follows: "Q. 1. Did the Central Hudson Gas & Electric Corporation have the right to direct and control Louis Wawrzonek during the working hours of August

14, 1932? A. Yes. Q. 2. Did the Central Hudson Gas & Electric Corporation hire the said Louis Wawrzonek for the work that he was engaged in at the time of his death? A. Unable to agree. Q. 3. Did the Central Hudson Gas & Electric Corporation have the right to discharge the said Louis Wawrzonek on August 14, 1932? A. No. Q. 4. Was Louis Wawrzonek in the employ of the Central Hudson Gas & Electric Corporation on August 14, 1932? A. No." The Appellate Division reversed on the law and the facts, and dismissed the complaint without prejudice, holding the answers to the third and fourth questions as given by the jury contrary to the weight of evidence. The Appellate Division said in its opinion that the record showed that the deceased was hired, controlled and directed by the defendant's foreman, who also had the right to discharge him, that the deceased was engaged in defendant's work under such employment at the time of the accident, and was not in the employ of the Northeast Company as alleged in the complaint.

The respondent particularly relies upon the defense that the deceased was an employee of the defendant at the time of the accident, saying in its brief: " The point on this appeal is whether the deceased was an employee of the defendant at the time he met his death so that the sole remedy of the appellant would be under the Workmen's Compensation Law." We do not elaborate, therefore, on the issue of negligence, saying in brief that there was sufficient evidence to go to the jury to show that the defendant by its own acts created the necessity of moving an unstable machine over ground so uneven that the machine was more than likely to tip over. The jury could find that the level pathways were piled with oxide. A machine was furnished that was apt to tip over if moved over uneven ground. With full knowledge of these facts, a direction was given to move the machine without taking sufficient precautions. The question of negligence of the defendant as well as of contributory negligence and assumption of risk were properly left to the jury and its

decision in favor of the plaintiff cannot be said to be against the weight of the evidence.

We pass then to whether the plaintiff was either a general or special employee of the defendant at the time of the accident. If at such time, employment, either general or special, existed, then the provisions of the Workmen's Compensation Law (Cons. Laws, ch. 67) were applicable, and the plaintiff is barred from bringing an action for negligence. (*Matter of Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97.) The Appellate Division having reversed and dismissed the complaint, we reach the inquiry whether there were any facts sufficient to carry to the jury the question whether the deceased was not an employee of the defendant. (*Maguire* v. *Barrett*, 223 N. Y. 49.)

Prior to 1932 the defendant maintained its labor on its own payrolls, but then, in order to avoid increase in premium due to accidents, sought to carry its labor on the payroll of another company, so that such increase in compensation rate would not fall on the defendant. The Northeast Utilities Contractors, Inc., was a corporation engaged chiefly in construction work under contract with public utility companies. Defendant entered into a written contract with Northeast, which provided in substance that Northeast was to furnish labor and do everything necessary to prosecute the work in an expeditious and workmanlike manner. The defendant was to " furnish material, transportation, supervision, plans, tools and equipment." All work was to be performed in accordance with the defendant's construction standards, safe practices, drawings and specifications. For performance of this work, Northeast was to be paid the cost of such labor plus a fee of ten per cent, together with the cost of workmen's compensation insurance and contractor's public liability insurance, including property damage liability. The defendant was to be furnished before the commencement of the work with Northeast's

certificates of insurance. Northeast was to give personal attention to the faithful prosecution and completion of the work, and " be present either in person or by a competent and duly authorized representative on the site of the work continually during its progress." Also Northeast was to enforce strict discipline and good order among its employees, and not employ any unfit person or any one not skilled in the work assigned to him. Northeast also agreed to conduct operations so as to provide good relations with the public, and discharge any employee causing breaches of the peace or any other disturbance of said relationship. Northeast was to barricade all trenches and excavations both day and night, and adequately light each night said barricades and equipment and contractor's equipment left in streets or highways. If Northeast did not prosecute the work properly, or failed to perform any provisions of the contract, defendant, after three days' written notice, might do any work necessary to remedy such default and, should Northeast refuse to prosecute the work or default after three days' written notice to Northeast, the defendant might terminate the contract. Northeast was also to obtain licenses and permits and to pay promptly for all materials and for all labor employed by it.

Although words providing that the contractor agrees to prosecute the work " as an independent contractor " were stricken from a clause which also provided that the work should be prosecuted in every respect at the risk of Northeast until completed and accepted by the owner, except as to damages or injuries caused directly by the owner's agents or employees, there can be no doubt that the relationship which the contract purported to set up was that of independent contractor. Even if the right of general supervision can be said to be in defendant, this would not destroy the status of an independent contractor. (*Moore* v. *Wills, Inc.*, 250 N. Y. 426.)

Following the execution of this contract the services of the deceased, as an employee of the defendant, were terminated, and the temporary labor, of which the defendant was a part, was transferred to a payroll known as the "Northeast Payroll," which was paid from the Northeast bank account.

There is evidence that Central Hudson had conferred upon its superintendent and foreman the right to hire and discharge laborers, although there is no direct evidence that the deceased was so engaged on the day of the accident. On the other hand, there are admissions by Draney, the foreman of the defendant, on cross-examination, that although he was acting foreman of the yard at that time, he had no control over the deceased, and had no power to direct him in his work, and never did hire or discharge the deceased. In any event, whatever power was conferred by the defendant could not affect the right of Northeast to hire, control or discharge its employees, and there is no evidence that Northeast ever relinquished this power. Immediately following the accident practically all the laborers signed statements that they were employees of Northeast. At the trial, however, they testified that they did not know that they were working for Northeast. Moreover, the defendant did not notify the Labor Department of the State of New York of the death of the deceased as one of its employees, until sixteen months after the death and after the answer of the defendant had been amended, whereas Northeast did file such a notice with the Department of Labor immediately following the death. Defendant also reported to the Public Service Commission the death of the deceased and certified that he was employed by Northeast under contract work for the defendant. The defendant did not pay premiums for workmen's compensation insurance on these labormen, but Northeast did. In its original answer defendant admitted that the deceased was not in its employ, but in the employ of

Northeast, but sixteen months later amended its answer claiming deceased was its employee.

A general employee of one employer does not become the special employee of another unless the former surrenders and the latter assumes the power to command the employee as to the details as well as the ultimate result of his work. (*Ramsey* v. *N. Y. Central R. R. Co.*, 269 N. Y. 219.) " ' The rule now is that as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its decision.' (*Charles* v. *Barrett*, 233 N. Y. 127, 129.) In the absence of proof that the general employer has surrendered control completely, it must be presumed that his control continued. (*Bartolomeo* v. *Bennett Contracting Co.*, 245 N. Y. 66.) " (*Irwin* v. *Klein*, 271 N. Y. 477, 484.)

Upon the facts above related, it cannot be said that there is conclusive evidence that the general employer had surrendered control completely and that Central Hudson had assumed such control. Although the jury found that the defendant had the right to direct and control the deceased, the sense in which these words were used is shown as not amounting to a finding of special employment by defendant because of the simultaneous finding by the jury that defendant did not have a right to discharge the deceased, and that he was not in the employ of defendant, and also by the verdict rendered in behalf of the plaintiff. At the risk of repetition we note that the finding of the Appellate Division that the deceased was an employee of the defendant is diametrically opposed to the recorded intention of each and every party to the employment. Moreover, the defendant had the deceased formally resign from its service so that he could enter the service and employment of Northeast. Defendant thus went to formal lengths to show its purpose and

intent not to have the deceased in its employ. This was sufficient to raise a question of fact for the jury to determine whether the deceased had become a special employee of the defendant at the time of the accident. When a party, with meticulous care, enters into a contract which purports to establish a relationship which enables it to escape the burden of paying increased workmen's compensation premiums based upon its actual operations, it does not lie in the mouth of that party to claim that what it did was not intended to and did not set up the relationship and thus escape the disadvantageous consequences of its actions. (Cf. *Svenska T. F. Aktiebolaget* v. *Bankers Trust Co.*, 268 N. Y. 73, 81; *Shuba* v. *Greendonner*, 271 N. Y. 189.) Contracts must be some evidence of the intentions of the parties thereto, and a party, by claiming that the contract was sham or intended to work a fraud, cannot completely destroy its evidential value. In reaching this conclusion it is perhaps supererogatory to say that we do not hold that in actions involving third parties or public authorities the defendant could set up our holding as showing conclusively that Northeast was an independent contractor. (See *Murray* v. *Union Ry. Co.*, 229 N. Y. 110, 113.) There, too, as in the case at bar, the question would be one of fact for the jury. Each case must be determined within the applicable rules of law upon the evidence adduced. In the case at bar there was a question of fact to be determined by the jury, and, therefore, the judgment dismissing the complaint must be reversed and a new trial granted. It thus becomes unnecessary to consider the cross-appeal.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Judgments reversed, etc.