ARTHUR STONE, Respondent, *v.* BIGLEY BROS., Appellant.

Argued June 8, 1955; decided July 8, 1955.

*Hyman R. Friedman* and *Samuel J. Jackman* for appellant. I. Plaintiff conceded and admitted that the act of opening the chain was an unloading act. The jury is thus barred from finding that same was not an unloading act. II. The jury cannot be permitted to find, in the face of the written contract, that the opening of the chain was not an unloading act. (*Braxton* v.

*Mendelson,* 233 N. Y. 122; *Pedersen* v. *Stockard S. S. Corp.,* 268 App. Div. 992; *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 518; *Anderson* v. *Boyer,* 156 N. Y. 93; *Delisa* v. *Arthur F. Schmidt, Inc.,* 285 N. Y. 314; *Hexamer* v. *Webb,* 101 N. Y. 377; *Wyllie* v. *Palmer,* 137 N. Y. 248; *McNamara* v. *Leipzig,* 227 N. Y. 291; *Morris* v. *Brown,* 111 N. Y. 318; *Lewis* v. *New York, O. & W. Ry. Co.,* 210 N. Y. 429.) III. Even if defendant's "transportation" obligation be extended to include an obligation to open the chain in the course of the unloading, the jury could not find, on this record, that defendant had supreme control over such act. (*Green* v. *Wachs,* 254 N. Y. 437; *Irwin* v. *Klein,* 271 N. Y. 477; *Charles* v. *Barrett,* 233 N. Y. 127.) IV. Plaintiff failed to prove negligence. V. Plaintiff was barred as a matter of law because of contributory negligence — assumption of risk.

*Benjamin H. Siff* and *Melvin Sacks* for respondent. I. Henn was presumptively under defendant's control. (*Bartolomeo* v. *Bennett Contr. Co.,* 245 N. Y. 66; *Wawrzonek* v. *Central Hudson Gas & Elec. Corp.,* 276 N. Y. 412; *Delisa* v. *Arthur F. Schmidt, Inc.,* 285 N. Y. 314.) II. Directions by Bethlehem as to when and where Henn was to park the trailer or remove the chains, do not, as a matter of law, rebut the presumption. (*Murray* v. *Dwight,* 15 App. Div. 241, 161 N. Y. 301; *Ramsey* v. *New York Central R. R. Co.,* 269 N. Y. 219; *Henry* v. *Stanley Hod Elevator Co.,* 129 App. Div. 613; *McNamara* v. *Leipzig,* 227 N. Y. 291; *McHugh* v. *McCormick,* 228 App. Div. 659; *Johnson* v. *Netherlands Amer. Steam Navigation Co.,* 132 N. Y. 576; *Walsh* v. *Riesenberg,* 94 App. Div. 466; *Cowell* v. *Saperston,* 149 App. Div. 373, 208 N. Y. 619.) III. Assuming that Henn may have been assisting Bethlehem, that fact did not, as a matter of law, make him Bethlehem's servant. (*Bartolomeo* v. *Bennett Contr. Co.,* 245 N. Y. 66; *Delisa* v. *Arthur F. Schmidt, Inc.,* 285 N. Y. 314; *Murray* v. *Dwight,* 15 App. Div. 241, 161 N. Y. 301; *McNamara* v. *Leipzig,* 227 N. Y. 291; *Burton* v. *American Bridge Co.,* 297 N. Y. 993.) IV. It was a question of fact whether Henn's removal of the chain was an act in the furtherance of defendant's business so as to make defendant, his employer, responsible under the doctrine of *respondeat superior.* (*Mott* v. *Consumers' Ice Co.,* 73 N. Y. 543; *Osipoff* v. *City of New York,* 286 N. Y. 422; *Muller* v. *Hillen-*

*brand*, 227 N. Y. 448; *Riley* v. *Standard Oil Co. of N. Y.*, 231 N. Y. 301; *Quinn* v. *Power*, 87 N. Y. 535.)   V. Whether Henn's removal of the chain was a facet of transporting the steel or a facet of unloading the steel was a question of fact for the jury. (*Dittiger* v. *Isal Realty Corp.*, 290 N. Y. 492; *May* v. *Dermont*, 114 Misc. 106; *Horby Realty Corp.* v. *Yarmouth Land Corp.*, 270 App. Div. 696.)   VI. Negligence and freedom from contributory negligence were questions of fact.

DESMOND, J.   The question before us may be stated thus: when Bethlehem Steel Company, in connection with the erection by it of a bridge in Long Island City and the moving of steel from a waterfront dock to the bridge site, had made a contract with this defendant, a trucking corporation, to transport the steel from dock to bridge site, and when the contract specifically provided that all loading and unloading at the bridge site was to be done by Bethlehem and transportation was to be done by this defendant, and this defendant carried the steel from dock to bridge site in its own motor truck driven by its own employed chauffeur and the steel was tied or fastened on to the truck with chains which were part of the truck's equipment, and the truck and load arrived at the bridge site where a Bethlehem employee took over the direction of unloading, but defendant's truck driver opened up the chains above referred to without waiting for the hoisting apparatus to put a strain on the steel with the result that some of the steel fell off the truck and injured plaintiff, who was a Bethlehem employee at the job, was defendant's truck driver absolutely and as matter of law an employee, for the time being, of Bethlehem, since the latter was in charge of the unloading, so that the truck driver was not the agent of defendant in unhooking the chains, and defendant therefore not liable for the truck driver's negligence?

The Trial Justice, granting defendant's motion to dismiss at the close of plaintiff's case, delivered a short opinion, the substance of which is contained in this paragraph: " I hold here as a matter of law the act of removing these chains was not part of the duty of Bigley under its contract; that Henn in undertaking to remove them, especially in the light of the testimony of the witness Turner, who said that he, for Bethlehem, was in complete control of the unloading operation and that it was his duty to see

that unloading was performed both from the viewpoint of efficiency and safety, was not engaged in the business of his master; that the plaintiff has failed to make out a case, and the defendant's motion to dismiss is granted with an exception to the plaintiff.''

On appeal to the Appellate Division, however, that court wrote a brief opinion, in which it pointed out that continuance in the service of the general employer (defendant) is presumed until command is shown to have been surrendered, and that, in the present case, it was a jury question as to whether the chauffeur was acting in the interest of his employer, or of Bethlehem, and as to whether his act of unloosening these chains on his truck was a preparation of that vehicle for unloading, rather than part of the unloading operation itself. The dissenting Justice wrote that since, by the written contract, Bethlehem had the whole duty of unloading, therefore the chauffeur was performing a duty that was exclusively that of Bethlehem and that, for his negligently performing that duty, Bethlehem alone would be responsible. It seems to us that on the facts in this record it cannot be held as matter of law that this truck driver had completely passed from the control of his own employer and into the employment of Bethlehem when, on his own employer's truck, he was unfastening chains which were a part of that truck, so as to make it possible for Bethlehem to unload the steel. Of course, in a sense the truck driver was furthering, and co-operating in, Bethlehem's contractual duty of taking the steel off the truck, but it would not be irrational to say that at the same time he was doing work that could be said to be that of his own employer, since he was handling chains that belonged to his employer and which he, as a servant of his employer, had, earlier that day, locked around the steel. It is true that a Bethlehem employee (foreman Turner) was in charge of the unloading and had given directions to the truck driver, and that the unloading was Bethlehem's job per contract, but there is nothing to show that this driver's employer ever turned the driver over to Bethlehem. It would not be unreasonable for a jury to say that the unlocking of the chains, while a necessary preliminary to unloading, and in that sense part of the unloading, was a necessary incident, also, of the handling of the truck itself and of its equipment,

The accident, in which plaintiff was injured, occurred on November 12, 1953. Bethlehem was then and for some time had been, building a highway bridge over a creek in Long Island City. Defendant was in the general trucking and hauling business. In July, 1953, Bethlehem and defendant entered into a contract, the pertinent provision of which is as follows:

"The Carrier will unload at dock and/or railroad yard specified and transport to site above mentioned at a point within reach of Bethlehem's equipment. Bethlehem will unload carrier's trucks at the site. Carrier will have on hand a competent foreman who can speak English to take charge of loading Carrier's trucks and to whom orders can be given. Carrier will furnish all necessary labor, tools, equipment, fuel and lubricants necessary for the above described unloading and transporting. Carrier will deliver girders in upright position.

"The Carrier will assume all obligations placed upon Bethlehem pertaining to the transporting of structural steel for this project."

There is no doubt or dispute that under this contract defendant was to do transportation only and Bethlehem was to retain the bridge site unloading functions. On the afternoon of November 12, 1953, acting under this contract, defendant, the trucking company, took on board one of its trucks, a load of steel consisting of two very large structural steel pieces weighing about five tons each and together being about five feet wide. Defendant, through the services of a "loader" employed by it and of its truck driver Henn, secured these steel pieces onto its trailer pulled by its tractor truck, by fastening around the steel pieces long steel chains belonging to the trucking company. Each of these chains had some kind of hook arrangement which could be, and was, tightened to secure the load for "the safety of the load at all times". The truck and trailer, with the steel on board, travelled to the job site. As was the practice, a foreman employed by Bethlehem took over when the load arrived at its destination, and this foreman told defendant's chauffeur where to put the truck and assigned a crew of men, employed by Bethlehem, to unload the steel. The unloading itself was done by a Bethlehem crane, the hook of which was attached to steel cables (not, of course, the chains above referred to) which steel cables belonged to Bethlehem and were tightened

around the steel pieces. The whole scheme of the unloading operation was that these new chains or cables would be fastened by Bethlehem's men around the steel, then the crane would be hooked on to these new chains and the lines from the crane would be tightened, and then, and only then, would there be unfastened the originally placed chains which belonged to defendant trucking company. It is undisputed that it was the invariable practice for the truck driver to remove these chains. Baker, a Bethlehem employee, testifying for plaintiff, when asked whether it was the truck driver's job to take the chains off, said: "It was always his job. The Bethlehem Steel don't own the chains." (See, also, testimony of Bethlehem's foreman Turner.) From Baker's testimony, we get the impression (and so could a jury) that while the Bethlehem foreman might give a signal to the driver to remove the chains, the matter of exactly when to remove them was to some extent up to the driver, who was an experienced man in this business. It is undisputed, too, that the only safe practice is to hook the crane chains on to the load before loosening the truck's chains, so that the crane and the sling would be holding the load before the chains released it. Bethlehem's foreman, testifying for plaintiff, said that the truck driver took no part in the unloading and took no orders from the foreman, except that when Bethlehem's men were ready to take the load off he (the foreman) told defendant's driver to take off truck chains.

On this occasion, when the truck arrived at the site, the Bethlehem foreman told the truck driver where the former wanted the steel unloaded. The foreman, as was his custom, told the driver where to put the truck, and then the foreman assigned plaintiff and another Bethlehem employee to unload the steel. Then he directed that the crane be brought for unloading to the place where the truck was. The foreman then told the chauffeur that the steel was going to be unloaded, and the foreman went away to other duties. As he left, he saw the chauffeur begin to take the front chain off but the foreman did not consider there was any danger at that point since the rear truck chain was still on and the Bethlehem men were hooking the cable on to the steel load. Stone, the plaintiff, who was one of the Bethlehem men assigned by the foreman to the job, testified that when he came to the job the front truck chain had

been removed but the rear truck chain was still on the steel and plaintiff, too, thought that the rear chain would hold it until the crane hooked on. Plaintiff and Baker, the other Bethlehem man, climbed up on to the steel on the truck, and plaintiff then began to fasten on to the steel the cables or chokers furnished by Bethlehem which were going to be put on to the hook of the crane. Plaintiff had fastened one of these chokers and was working on another when suddenly one of the pieces of steel moved, slid off the trailer and rolled over with plaintiff underneath it, injuring him. It is true, as defendant argues, that the whole proof read together shows that the correct unloading practice was that the shackles and cables should first be fastened around the steel, then the crane hook affixed to the chokers, then the line from the crane tightened, and that only then should the truck's own chains have been loosened. Defendant concludes from this that the loosening of the truck's own chains was one of a series of steps in the unloading process and, of course, in a sense this is true. However, as it seems to us, a jury could conclude that even though this loosening of the truck's chains was part of the unloading in the sense that it took place in the middle of the unloading preparations, nevertheless, in another sense it was part of the truck driver's duty even though it coincided, or overlapped, or came between, unloading steps which were being performed by Bethlehem alone. A short and simple answer to defendant's argument is, it seems to us, that it cannot be said as matter of law that a truck driver removing his own truck's chains from his truck load had necessarily become, for the moment, a servant of the owner of the steel just because the latter had the contract obligation to do the unloading. The realities of the situation were such that the truck driver, by custom and practice, did this unloosening as part of what he at least thought to be his job.

The Trial Term dismissal of the complaint was based largely on the terms of the contract between defendant and Bethlehem, whereby the former was to do transportation only and Bethlehem was to do all the bridge site unloading. From this, Trial Term concluded that the truck driver was necessarily acting for Bethlehem. We think there is a missing term in that argument, or an erroneous assumption that because what the truck driver did in unloosening the chains took place between two of the

unloading steps, the unloosening was necessarily part of the unloading. We know that there are many situations where a general employer transfers an employee to a special employer (see *Ohlenschlager* v. *South Buffalo Ry. Co.*, 309 N. Y. 741, decided today) and we will assume (doubtfully) that the jury could conclude from all the facts here that something of that nature did occur here. However, we cannot convince ourselves that, as matter of law, such a conclusion was bound to result from this undisputed testimony.

The Appellate Division majority, in reversing, pointed to the settled law of New York (citing *Delisa* v. *Schmidt, Inc.*, 285 N. Y. 314; *Wawrzonek* v. *Central Hudson Gas & Elec. Corp.*, 276 N. Y. 412, and *Bartolomeo* v. *Bennett Contr. Co.*, 245 N. Y. 66) that, absent conclusive proof of surrender of control by the general employer, the presumption is that the general employment continues. The *Delisa* opinion, after stating this presumption, says, in effect (*supra*, p. 319), that the surrender of control may be by an agreement binding on the general employer, but there is no evidence in the present case of any specific agreement to transfer the truck driver from one employment to the other. Defendant cites the *Delisa* case as one of its prime authorities, but what the *Delisa* opinion said (p. 319) is that when workers in a general employment are doing work which primarily benefits a special employer, but which work is substantially though indirectly beneficial to the general employer, a jury may draw the inference that an employee who is furthering the interests of his immediate employer is acting within his authority as agent of the latter. *Delisa*, if it be authority here at all, is an authority that the holding in the present case was one of fact for the jury.

We will analyze, briefly, the other principal authorities cited by defendant. In *Braxton* v. *Mendelson* (233 N. Y. 122, 124), the opinion says that where there is a written contract, the question is for the court not the jury. But that case must be read in the light of its facts. What the court actually held was that when a trucking company agreed to do the delivery work for a milk company at a fixed price per day for truck and driver, the driver remained the servant of the trucking company even though he was delivering the milk company's milk and taking orders from the milk company's officers.

Other cases are pointed to by defendant as holding that where there is an unambiguous contract allocating or dividing work between a general and special employer the court must determine which category includes the work which the servant is doing at the time. Here, the written contract assigns the unloading to Bethlehem and the transportation to defendant, but the ambiguity or overlap is as to whether the particular thing that the driver was doing, that is, unloosening the truck chains, was, reasonably and realistically, to be considered transportation or unloading. *Lewis* v. *New York, Ontario & Western Ry. Co.* (210 N. Y. 429) is, we think, not at all in point here because it deals with a situation where a consignor loaded his goods onto a railroad car. The court held as matter of law that the railroad company had nothing to do with the manner in which the loading was done. The fact, in *Lewis* (*supra*), was that the railroad company simply had nothing whatever to do with any part of the loading or unloading but merely furnished the car and pulled it on its rails.

In *McNamara* v. *Leipzig* (297 N. Y. 291), defendant rented a passenger automobile and chauffeur from a garage company for three months for a fixed sum with the garage company paying all expenses; the court held that the defendant had no control over the driver except merely to tell him between what places to drive the car, and that the defendant, therefore, was not liable for the driver's negligence. Again, as applied to our case, the result deduced from *McNamara* (*supra*) would be that defendant alone and not Bethlehem would be liable, if we held it was a question of law rather than of fact. *Anderson* v. *Boyer* (156 N. Y. 93) deals with a charter of a ship. Its master and crew had been turned over absolutely to the charterer or lessee and the court held that there was a complete surrender of control and possession to the lessee or charterer since the owner of the lighter had nothing whatever to do with it or its operation after the charter was made. *Irwin* v. *Klein* (271 N. Y. 477), besides restating the rule of presumption of continuance of control in the general employer, points out that the decisions in this field can be reconciled only by the analysis of the specific facts in each case, although the rule itself is simple enough, that is, that the servant of one

master becomes for the time being the servant of another when he passes completely out of the direction and control of the former into that of the latter. *Irwin* v. *Klein* (*supra*), citing other authorities, says the question is as to who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details. To make Bethlehem in our case the pro tem employer of the driver would require a finding that when the driver was unloosening his own truck's chains he was operating under the supreme control and direction of Bethlehem in all the details of what he was doing. We question whether this record would justify such a finding of fact, much less require such a conclusion of law.

Appellant's counsel makes much of what appellant claims are concessions and admissions by plaintiff that the loosening of the truck chains was an unloading act, citing statements, at the trial, of plaintiff's attorney, and various parts of plaintiff's bill of particulars, at all of which points the plaintiff's counsel said in words or effect that the accident happened during the " unloading " of the steel. Similarly, appellant cites testimony of plaintiff's witnesses that this accident happened while the steel was being " unloaded ". To all of this, plaintiff answers that these are the statements of counsel and witnesses and are not conclusive, but merely somewhat loose verbiage which cannot fairly be considered as binding or conclusive on plaintiff. We think that is so. We have the exact and undisputed facts as to what happened and, while the remarks of counsel and witnesses are illuminating, they cannot preclude the courts from ruling that there is a question of fact not as to whether unloading was going on at the time, or as to whether the truck driver's activities expedited unloading, but as to whether the truck driver thus was transferred from one employment to another.

The latest decision in our court on this general subject is *Dicenzo* v. *New York Shovel & Crane Corp.* (308 N. Y. 871), decided in March, 1955, a case where decedent was crushed to death between a revolving cranehouse on a crane and the back of the crane's truck cab. The crane was being operated by a man named Salvante who was being paid by the general contractor, but Salvante himself was one of four owners of the

corporation which owned the crane and he divided with his co-owners anything he earned from the contractor over $100 a week. The proof showed that the defendant corporation as such did nothing beyond turning the crane over to the general contractor, even though the operator was one of the stockholders and officers of defendant corporation. The Trial Term gave plaintiff a verdict against the owner of the crane, but the Appellate Division reversed, on the law, on the ground that the crane driver was plainly an employee of the contractor and not of the crane owner, and on the further ground that there was no negligence on the crane operator's part. We affirmed without opinion. The *Dicenzo* case (*supra*) cannot help defendant-appellant in the present case, since there is no real contention in our case that defendant " turned over " to Bethlehem either the trailer-truck or its driver or the chains.

The order appealed from should be affirmed, with costs, and judgment absolute directed against the appellant on the stipulation herein.

VAN VOORHIS, J. (dissenting). The facts are thus stated succinctly at the beginning of the *Per Curiam* opinion of the Appellate Division:

" On October 12, 1953, plaintiff was injured when certain fabricated steel fell upon him and caused the loss of a leg among other injuries. Plaintiff was an employee of Bethlehem Steel Company, which was erecting a bridge in Long Island City. Bethlehem had a contract with defendant, a trucking company, under which the latter was to pick up fabricated steel at docks and railroad yards, and transport the same to the job site. The contract provided that unloading of the steel from the trucks at the job location was to be performed by Bethlehem.

" On the day in question, two exceptionally large pieces of structural steel were loaded on a truck of defendant driven by one Henn. It was impossible to use the ordinary side stakes or stays. In order to secure the load, two encircling chains, property of defendant, were wrapped around the load and trailer platform at each end.

" When the vehicle arrived at the job, plaintiff and a coworker climbed on the load to fasten cables known as ' chokers ' in

preparation for lifting the steel from the truck by means of a hoisting crane. Henn, in accordance with what witnesses said was the customary activity of a driver in such situations, removed the front encircling chain, and then attempted to remove the rear one. He did so, however, before the chokers were made taut. Thereupon, the large pieces of steel slid off the trailer, and plaintiff rolled underneath them and was injured.

" The complaint was dismissed upon the ground that, as the contract between defendant and Bethlehem required the latter to unload the steel, the act of Henn in removing the chains was part of the unloading process and thus the work of Bethlehem, so that defendant was no longer liable for negligent acts of Henn."

Under the authorities and upon the evidence in this case, it seems to me that dismissal of the complaint upon the law was correct. The contract between Bethlehem and defendant (described therein as " The Carrier "), in evidence as plaintiff's Exhibit 1, provides that " Bethlehem will unload carrier's trucks at the site ". It is not disputed that the latter clause applies to this operation. The reason for this clause was to enable the carrier to load the truck, and then transport it to the destination without bringing the unloading crew to that point where Bethlehem already had its crew and the necessary unloading machinery. The only employee whom the carrier needed to have accompany the load was the driver of the truck.

These steel beams had been securely enclosed by encircling chains by the carrier's loading crew, when they were placed upon the truck. The driver's function on behalf of the carrier was to move the truck. It was apparent that he could not undertake to unload the truck alone, or commence to unload it, and therefore the responsibility for unloading was placed by the contract in unambiguous words upon Bethlehem.

The evidence is undisputed that Bethlehem's unloading crew had taken over by commencing the operation of unloading before this accident occurred. There is no contradiction of the testimony to this by Wilfred Turner, foreman of Bethlehem's unloading gang of five men whose function and duty it was to unload this truck with the help of a crane. It was imposible for the driver of the truck himself to unload these steel beams, and

he could not undertake to loosen them and hold them upon the truck with his hands before Bethlehem's unloading crew had made them secure. Bethlehem had to drive up its crane, and fasten it to these beams and take other precautions, so that they could be removed in safety and with efficiency before it was safe to release the chains. The circumstance that the chains were loosened by the driver of the truck is irrelevant. In the nature of things, there could not be two bosses of this unloading job. Under the contract, when the driver brought the truck to its destination the carrier's function ended. Necessarily Bethlehem with its machinery and unloading gang had to assume responsibility at that point. If each tried to superintend this delicate and dangerous operation, the result would be chaotic. Therefore, when the driver undertook to loosen the chains, which he could only do subject to orders from Bethlehem, under clear principles of general and special employment, he became the special employee of Bethlehem. It makes no difference that express instructions were not given. It was all part of a routine operation. The point is that appellant's driver was at all times subject to direction and control by Bethlehem concerning the details of the unloading operation, which was Bethlehem's sole responsibility. It could not have been otherwise, if Bethlehem had already commenced the unloading operation, which it had done. In any other view there would have been a division of authority, at variance with the terms of the contract and which the nature of the operation forbade. All of these men had to work together under single supervision, or the work could not be performed. Bethlehem's foreman indicated to the chauffeur where to put the truck. He testified: "Q. We now have that truck stopped. A. Right. Q. From the time that truck is stopped until the steel is taken off that truck, whether you watch every particular job or not, when you are around, you are in complete charge of that unloading, aren't you? A. I am."

Again Turner testified, at all times as a witness for plaintiff: " You could stop that truck driver, couldn't you, from removing that chain at any time you wanted to? Couldn't you? A. Yes, I could. I could tell him not to take it off. Q. You have that right, haven't you? A. Yes, I would have."

Plaintiff testified that there was an established sequence of acts in the usual unloading operation, to wit: "Q. And the usual method was that after you got onto this load with two chains holding it, that the hooking on process would take place with the chains still holding it, is that right, that is, the truck chains, right? A. Yes, sir. Q. That after the hooking on process had taken place, there would then be made a connection between the crane slings to the iron pieces, right, on the truck? A. Yes, sir. Q. Then the next thing, it would be made sure that the crane and its sling were holding the load, right? A. Yes, sir."

"Q. The two chains then holding the load would then be removed after the crane held the load, is that right? A. Yes, sir."

This accident resulted from loosening the chains during the unloading operation before the crane was attached.

A coworker of plaintiff testified that "There is one safe way you can do it: leave the safety line on there. Hook it, and then when you have got it with the crane, take your safety off, whatever it happens to be, chain, line, or whatever it is, leave it alone. Like this, they never should have been taken off."

There is no doubt that the chauffeur took the chains off too soon. Neither is there any dispute in the evidence that Bethlehem's unloading gang had already taken over and commenced the unloading operation. The foreman testified that the steel beams which did this injury rolled off during the unloading operation.

Thereafter the following occurred: "The Court: Mr. Turner, you as the foreman were responsible for efficiency, to see that the job was done right for the boss? The Witness: Yes. The Court: And for safety, too? The Witness: That is right."

Plaintiff himself had confirmed that the unloading operation had commenced by testifying that he and his coemployee Baker had already been on the truck before these steel beams fell off. Referring to a time before the accident, the court inquired: "Did any of your team go on the truck to do unloading, or did others do unloading and did you pick up the steel as it was unloaded? The Witness: Mr. Baker and myself."

It is undisputed that the unloading operation had begun, that it went wrong due to the act of the driver who was in the carrier's general employ but subject to Bethlehem's orders while engaged in a single integrated operation, and that the decision of the appeal turns upon whether the driver was acting in the special employment of Bethlehem. The familiar rule is stated in *Charles* v. *Barrett* (233 N. Y. 127); *Irwin* v. *Klein* (271 N. Y. 477), and *Braxton* v. *Mendelson* (233 N. Y. 122). It is unimportant whether the question may usually be one of fact or of law. The undisputed evidence requires here that it should be decided as a question of law. There is no doubt that this driver was negligent in the part which he took in the unloading operation, that the injury to plaintiff (Bethlehem's employee) resulted from that act of negligence, but neither is there any dispute in the evidence that the driver was wholly subject to the direction of Bethlehem's foreman, or that Bethlehem's unloading gang had already entered upon the operation of unloading for which Bethlehem had assumed responsibility pursuant to the unambiguous requirement of the written contract. It is true that where an employee is acting in furtherance of the business of his general employer, there is no inference of a new relation of employment "unless command has been surrendered, and no inference of its surrender from the mere fact of its division" (*Charles* v. *Barrett, supra,* p. 129), but where command has been surrendered, as it without contradiction was and had to be in this instance, the general employer is no longer liable notwithstanding that the employee, in a general way, is still furthering its business. The judgment of the Appellate Division should be reversed, with costs, and that of the Trial Term should be reinstated, dismissing the complaint.

CONWAY, Ch. J., DYE, FULD, FROESSEL and BURKE, JJ., concur with DESMOND, J.; VAN VOORHIS, J., dissents in an opinion.

Order affirmed, etc.