OPINION OF THE COURT
Benjamin F. Nolan, J.
The Department of Housing Preservation and Development of the City of New York (DHPD) brought this action under CCA 203 (subd [/]) to recover $28,862.48 in expenses incurred for emergency services provided to defendant’s building. The action was based upon a duly served statement of account and demand for payment (in the nature of an “account stated”) authorized by sections D26-54.07 and D26-40.09 of the Administrative Code of the City of New York — statutes enacted specifically to make such a statement of account the predicate for this kind of recoupment suit.
*866 Defendant Otis Chestnut was sued as managing agent and as an owner despite the fact that title to the building is not in his name but in the name of the corporation of which he is president. Defendant signed the multiple dwelling registration on behalf of the owner and as managing agent. One who signs in either of these capacities is defined as an owner in subdivision 44 of section 4 of the Multiple Dwelling Law and section D26-1.07 (subd a, par 45) of the Administrative Code, and as such is personally liable under section D26-54.05 of the Administrative Code for the repayment of expenses incurred by DHPD for emergency maintenance of the building. Accordingly, Otis Chestnut is a proper party defendant in this action (see Housing & Dev. Admin. v Johan Realty Co., 93 Misc 2d 698).
Defendant was obligated under section D26-54.07 of the Administrative Code to respond to the statement of account within 30 days after its service upon him. Defendant had never denied receipt of the statement of account, nor has he ever challenged the propriety of its service upon him; yet, he has never responded to it. Some 13 months after service of the statement, DHPD brought this action in the Housing Part of the Civil Court under CCA 203 (subd [Z]). Defendant’s answer alleged only a general denial. Thereafter, DHPD brought a motion for summary judgment; and, defendant cross-moved to dismiss the complaint, alleging subject matter jurisdictional defects, namely, that the sum sued for exceeds the maximum monetary jurisdiction of the Civil Court, and, that even if it were to be held that such an action may be brought in the Civil Court, it is not within the jurisdiction of the Housing Part of the Civil Court because DHPD is prosecuting a civil remedy as a general creditor.
It is clear however that the objection to suit in the Housing Part of the Civil Court is patently erroneous. CCA 110 (subd [a], par [3]) specifically provides that a Housing Part of the Civil Court shall be devoted to “Action * * * for costs, expenses and disbursements incurred by the city of New York in the elimination or correction of a nuisance or other violation” of laws which include but are not limited to the Housing Maintenance Code, Building Code and Health Code of the Administrative Code of the City of New York.
*867 CCA 203 (subd [Z]) is silent as to any express limitation upon the amount of recovery; but, when the statute is read and interpreted as a whole it follows that the framers of the statute must have contemplated recoveries in excess of the traditional $10,000 maximum monetary jurisdiction of the Civil Court because a monetary limitation of $10,000 would defeat the purposes of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97).
CCA 203 is entitled: “Actions involving real property”. It is a statute which gives the Civil Court specific subject matter jurisdiction it did not otherwise possess. The first 10 subdivisions, (a) through (j), pertain to actions (a) for partition, (b) to foreclose, redeem or satisfy a mortgage, (c) to foreclose a lien, (d) for specific performance, (e) to establish, enforce or foreclose a mechanic’s lien on real property, (f) to reform or rescind a deed, (g) to reform or rescind a contract for the sale of real property, (h) to reform or rescind a mortgage on real property, (i) to compel the determination of a claim to real property, and (j) to bring an action of ejectment. Each subdivision expressly limits the action to one in which the assessed valuation of the real property or (where applicable) the amount of the lien, mortgage or contract price “does not exceed $10,000 at the time the action is commenced”. Each of the rest of the subdivisions — six of them, from (k) through (p) — pertain solely to the City of New York, enlarging the right of the city to enforce the residential property codes. They are subdivisions (k) to impose and collect civil penalties, (Z) to recover emergency repair expenses, (m) to establish, enforce or foreclose a lien upon real property and the rents therefrom, for civil penalties, or for expenses incurred in eliminating a nuisance or violation of the Multiple Dwelling Law or the housing maintenance and health code, (n) to remove violations, to impose violations or stay penalties thereunder, (o) for issuance of an injunction, and (p) to vest title in the City'of New York to abandoned buildings. Nowhere in any of the said subdivisions (k) through (p) is any monetary limitation expressed or implied.
CCA 203 (subd [Z]) provides that the Civil Court shall have jurisdiction of an action brought by the City of New York “to recover costs, expenses and disbursements in *868 curred by the city of New York in the elimination or correction of a nuisance or other violation of any law described in subdivision (k) of this section”. The CCA (subd [k]) laws are: “state or local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the City of New York.”
The Legislature must be presumed to have enacted CCA 203 (subd [Z]) for a useful purpose (Matter of Smathers, 309 NY 487, 495; Matter of Tonis v Board of Regents, 295 NY 286, 293). Subdivisions (k), (Z), (m) and (n) were added in a group to CCA 203 by chapter 982 of the Laws of 1972 for the purpose of enlarging the jurisdiction of the Civil Court. Accordingly, the Legislature could not have intended to limit suit in recoupment actions to $10,000 because any kind of suit to recover $10,000 or less was already within the jurisdiction of the Civil Court before CCA 203 (subd [Z]) was enacted. That recoupment suits in excess of $10,000 were intended is further justified by application of a universal principle of statutory interpretation, expressio unius est exclusio alterius, meaning that “the specific mention of one thing implies the exclusion of the other thing”. Where, as here, the monetary limitation expressed in each of the first 10 subdivisions of CCA 203 is omitted from each of the subdivisions which follow and relate solely to the enlarged jurisdiction of the City of New York, “an irrefutable inference must be drawn that what is omitted or not included” in the city subdivisions “was intended to be omitted and excluded” (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 240, 236; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208-209; Matter of Albano v Kirby, 36 NY2d 526, 530, citing Waddell v Elmendorf, 10 NY 170, 177; Kurlander v Incorporated Vil. of Hempstead, 31 Misc 2d 121, 124; Doyle v Gordon, 158 NYS2d 248, 257). Or — put another way — the same inference is justified where the statute “speaks with total clarity about one thing and is thunderously silent about others” (Kessel v D'Amato, 97 Misc 2d 675, 687).
The foregoing rule is designed to give meaning to the intent of a statute, never to defeat it (Matter of Engel, 155 *869 App Div 467, mot for rearg den 155 App Div 921); and, the inference that an omitted thing was intended to be excluded may be fortified by the history of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240), and, by consideration of any reform contemplated by the enactment (Beal v Flinch, 11 NY 128).
The legislative findings and statement of policy set forth in section 1 of chapter 982 of the Laws of 1972 emphasize that the express objective of this very comprehensive enactment is to avoid the “dispersion of jurisdiction of [all] proceedings to compel compliance with housing standards among a number of courts” with a view to enabling the Housing Part of Civil Court of the City of New York to be the “single court * * * able to deal consistently with all of the factual and legal problems presented by the continuing existence of housing violations”, and, for that purpose, to be able to “consolidate all actions related to effective building maintenance and operation”.
Accordingly, it follows that the new equity and nonequity powers added to CCA 203 by said chapter 982 were intended to be concentrated in the Civil Court without discernable limitation, and, intended to be enforced in harmony with like statutes, whether pre-existing, or enacted in the same chapter 982. This interpretation is also consistent with the manifest objectives of such companion enactments as section D26-51.01 (subd. [k], par [3]) of the Administrative Code which provides that “fn]otwithstanding any other provision of law, the owner shall be responsible for the correction of all violations” (emphasis supplied) and the following two sections of the Administrative Code granting the city authority to bring actions to recover expenses incurred by the emergency correction of violations which the owner left uncorrected, namely, section D26-54.05, which refers to “All” expenses, and section D2657.01 which refers to “any” expenses. Recently, the Appellate Term, First Department, in Department of Housing Preservation & Dev. v Pirlamarla (NYLJ, Feb. 28, 1983, p 13, col 1), unanimously affirmed a money judgment of $17,546.57 rendered by a Housing Judge in a Housing Court recoupment action identical to the one at bar and based upon a statement of account identical to the one *870 which is the basis of the action at bar. In Department of Housing Preservation & Dev. v Pirlamarla (supra), the Housing Judge denied the defendant owner’s motion to dismiss and granted DHPD’s motion for summary judgment in the sum of $17,546.57. The issue whether the Housing Court had jurisdiction to render judgment in excess of $10,000 was raised before the Housing Judge and on appeal, and was resolved in favor of DHPD’s right to sue and obtain a recoupment money judgment in excess of $10,000, pursuant to CCA 203 (subd [/]).
It is equally clear that the statement of account was the appropriate procedural vehicle to aid DHPD in bringing suit, of this kind for a recoupment of emergency repair expenses. DHPD’s statutory authorization to sue for recoupment was expanded by the enactment of section D2654.07 of the Administrative Code (Housing Maintenance Code), which provides: “Whenever the department [DHPD] has incurred expenses for the repair of a dwelling or for the elimination (of any dangerous or unlawful conditions therein, pursuant to this article or any other provision of the administrative code, it may serve upon the owner in the manner provided in section D26-40.09 of this code a statement of the expense incurred and a demand for payment thereof.” The statute further provides that if the owner does not object to such statement of account in writing within 30 days, he may not contest any item contained therein in any subsequent judicial or administrative proceeding.
The legislative memorandum in support of the said enactment explained that, “This provision * * * based upon the procedure governing bank statements and many other periodic forms óf account will permit the amount of the debts to be fixed shortly after the work is done and should expedite later proceedings, without denying the owner his right to contest the amount due.” (Records of the city council, DHPD memorandum in support of Local Laws, 1971, No. 10 of City of New York.) The requirement that the owner must object in writing within 30 days following service of the statement of account, places DHPD on notice that the claim is in dispute. A written objection to the statement of account is equivalent to a request for admin *871 istrative review, and it gives the owner the opportunity to obtain a hearing with a DHPD negotiator who will entertain and review the owner’s contentions, and has the authority to settle DHPD’s claim, subject only to the approval of the comptroller. As a result, these negotiations often produce reasonable settlements, obviating the need for subsequent judicial proceedings.
An account stated — upon which the statement of account is modeled — has a long history of acceptance in business, reinforced by supporting case law. An account stated stands as a representation of prior dealings between the two parties. “[Wjhere an account is rendered showing a balance, the party receiving it must, within a reasonable time, examine it and object, if he disputes its correctness. If he omits to do so, he will be deemed by his silence to have acquiesced, and will be bound by it as an account stated” (Steingart Assoc. v Sandler, 28 AD2d 801, 803). In Sea Modes v Cohen (309 NY 141), the Court of Appeals held that these amounts so stated become binding contracts and are absolutely enforceable as such. (See, also, Corr v Hoffman, 256 NY 254; Rodkinson v Haecker, 248 NY 480, 484-487.)
Therefore, by enacting section D26-54.07 of the Administrative Code, the Legislature accomplished three objectives. A statement of account with the same status as that used in business, and as is codified in section 4-406 of the Uniform Commercial Code, was established to recoup expenses incurred under DHPD’s emergency repair program. Secondly, a specific time limit of 30 days was set, within which an owner must reply. Unlike the Uniform Commercial Code, which allows only 14 days for response, section D26-54.07 affords a more generous period for objecting. Finally* section D26-54.07 mandates that a failure to respond to the account in writing will be equivalent to an acquiescence in and to its contents. As pointed out, supra, this is not a novel proposition, being no more than a restatement and codification of existing case law.
In this case, a statement of account was served upon defendant on October 29,1980. Service was made pursuant to section D26-40.09 (subd a, par [3]) of the Administrative Code by mailing process to the latest business or residence *872 address of the owner as set forth in the multiple dwelling registration statement filed by the owner with DHPD. The said service was made by certified mail, return receipt requested, upon defendant Otis Chestnut at his address registered with DHPD, and a postal return receipt was returned to plaintiff DHPD indicating receipt at defendant’s registered address. Defendant did not respond in writing to the said statement of account within the statutory 30-day period, nor has he ever responded to the statement of account. The within action was not commenced until November 12, 1981, approximately one year after the statement of account was served. Defendant was accorded more than sufficient time within which to respond.
Defendant attempts to develop issues of fact sufficient to defeat summary judgment by calling attention to a payment he made to DHPD on March 20, 1980, prior to the commencement of this action, and, to an alleged collection and retention of rents by DHPD (pursuant to chapter 22 of the Administrative Code) because of his failure to reimburse DHPD for its emergency expenses, and, to presumed rights under a January 14, 1980 agreement which even if pertinent did not limit or forgive his statutory obligation to repay the emergency expenses, and, which DHPD claims (without contradiction) that he breached. However, these are at best contentions which defendant had an opportunity to raise with DHPD in response to the statement of account which he ignored at his peril. Now, he further argues that DHPD should not be entitled to a judgment posited upon the statement of account unless it has first submitted a comprehensive accounting to him. But, he cites no authority for this proposition, and this court can find none. Defendant’s account with DHPD is a “running” account which, one year after this action was brought, reflected an increase to $32,745.96 from the $28,862.48 recoupment sued for herein. Defendant is not estopped from bringing an action to compel an accounting, should he hereafter see fit to do so, but the issue of an accounting is not now before this court.
However, defendant is fatally handicapped in his efforts to resist summary judgment because of his failure to re *873 spond to the statement of account. As pointed out supra, the failure to respond is deemed an acquiescence, and defendant is thus bound by the statement as an account stated. Therefore, his objection to it now creates no issue of fact. In Department of Housing Preservation & Dev. v Pirlamarla (NYLJ, Feb. 28, 1983, p 13, col 1, supra), the Appellate Term, First Judicial Department — reviewing an action identical to the one at bar — concluded that “Since neither defendant nor anyone else associated with the premises objected to plaintiff’s [DHPD’s] statement of account within thirty days, the statement may not be contested in this proceeding (Adm. Code Section D2654.07).” For much the same reason, no issue of fact is created by the bare general denial in defendant’s answer (Duban v Platt, 23 AD2d 660, affd 17 NY2d 526). Finally, in resisting DHPD’s motion for summary judgment, defendant was obligated to but failed to produce evidence demonstrating the existence of triable issues of fact, by assemblying, laying bare and revealing proof which would show real defenses capable of being established upon a trial (Seaman-Andwall Corp. v Wright Mach. Corp., 31 AD2d 136, affd 29 NY2d 617; Mills v Ryan, 41 AD2d 689; Steingart Assoc. v Sandler, 28 AD2d 801, 802-803, supra; Rever v Nelson, 23 AD2d 505).
Accordingly, defendant’s motion to dismiss is denied; and, plaintiff DHPD’s motion for summary judgment is granted in the sum of $28,862.48, plus interest, and costs.