Bochman v Town of Cheektowaga (2004 NY Slip Op 24038)

Bochman v Town of Cheektowaga

2004 NY Slip Op 24038 [2 Misc 3d 966]

February 2, 2004

Supreme Court, Erie County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, June 22, 2004

[*1]
Joyce E. Bochman, Plaintiff,
v
Town of Cheektowaga et al., Defendants.
Supreme Court, Erie County, February 2, 2004

APPEARANCES OF COUNSEL

Goldberg Segalla LLP (Susan E. Van Gelder of counsel), for Cheektowaga Central School District, defendant. Phillips Lytle LLP (Preston L. Zarlock and Craig A. Leslie of counsel), for plaintiff. Damon & Morey (Joseph J. Manna of counsel), for Town of Cheektowaga, defendant.

{**2 Misc 3d at 967} OPINION OF THE COURT

John P. Lane, J. 
This action arises out of an accident that occurred on March 9, 1999 in which plaintiff Joyce Bochman claims to have been injured when she slipped and fell on property owned by defendant Cheektowaga Central School District (CCSD). Plaintiff contends that the cause of the accident was accumulated ice and snow resulting from negligence on the part of CCSD in maintaining its property. At the time of the accident, plaintiff was an employee of Erie I Board of Cooperative Educational Services (BOCES) assigned to teach a special education class conducted in the school building owned and operated by CCSD.
CCSD moves for summary judgment dismissing the complaint. CCSD bases its motion on two grounds, arguing that plaintiff's cause of action against it is barred by the Workers' Compensation Law. It first contends that BOCES and CCSD were engaged in a joint venture and that plaintiff, as an employee of BOCES, may not pursue her claim against CCSD. Alternatively, CCSD asserts that plaintiff was its special employee. Plaintiff cross-moves for partial summary judgment dismissing CCSD's twelfth affirmative defense that her claim is barred by the Workers' Compensation Law.
Boards of cooperative educational services are formed under the authority of article 40 of the Education Law. They are established to carry out programs of shared educational services in {**2 Misc 3d at 968}the schools of the component districts and provide instruction in such special subjects as the Commissioner of Education approves (Education Law § 1950 [1]). Boards of cooperative educational services may, [*2]at the request of their component school districts, and with the approval of the commissioner, operate special classes for students with disabilities and enter into contracts for that purpose (id. § 1950 [4] [d] [1], [4]; [p]). For the school year in which the accident happened (1998-1999), there was an agreement for the rental by BOCES of four classrooms in CCSD's building for the purpose of providing programs for pupils in special courses.
It is undisputed that BOCES offers its special education program through teachers it recruits and hires and who are assigned to perform special education services in buildings operated by component school districts within the BOCES district. Their employment is governed by a BOCES collective bargaining agreement. The teachers are paid by BOCES, which is responsible for monitoring their instructional techniques, evaluating their job performance and enforcing established procedures. BOCES is also responsible for assignment of special education students and providing funds for special education classroom operations, guidance and implementation of individual education plans and staff development opportunities to its special education teachers. BOCES established policies, procedures and regulations that governed plaintiff's employment. She was assigned to CCSD's building by BOCES. Her immediate supervisor was a BOCES employee. The responsibility of CCSD as the host component school district was limited to providing information and training to BOCES teachers about building operations and procedures, monitoring compliance with those procedures within the school building and assigning suitably equipped classrooms within school buildings to BOCES. CCSD also provided student scheduling for special area subjects and integration of special education students within the main student body, as well as immediate enforcement of student discipline as required (Pope affidavit).
Although a joint venture is akin to a partnership, it is established for a limited rather than a general purpose (see Gramercy Equities Corp. v Dumont, 72 NY2d 560, 565 [1988]). Where a joint venture exists, an employee working for one employer in the venture is considered an employee of the other employers in the venture (see Felder v Old Falls Sanitation Co., 39 NY2d 855 [1976]). Thus, an employee of one member of a venture {**2 Misc 3d at 969}injured while engaged in the work of the venture is barred from suing other members of the venture by the exclusive remedy provisions of the Workers' Compensation Law (see Mitchell v A.F. Roosevelt Ave. Corp., 207 AD2d 388 [1994]; Poppenberg v Reliable Maintenance Corp., 89 AD2d 791 [1982]). The burden of proof is, of course, upon the party asserting the existence of the joint venture (see Mertz v Seibel Realty, 265 AD2d 925 [1999]; Herman & Beinin v Greenhaus, 258 AD2d 260 [1999]).
Not every association of two or more entities that share a common interest or objective gives rise to a joint venture (see Matter of Steinbeck v Gerosa, 4 NY2d 302, 317-318 [1958], appeal dismissed 358 US 39 [1958]; Mills v Niagara Mohawk Power Corp., 262 AD2d 901 [1999]). "The ultimate inquiry [in determining whether a joint venture exists] is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit" (Village of Wellsville v Village of Andover, 231 AD2d 870, 870 [1996] [internal quotation marks omitted], citing Matter of Steinbeck at 317). "When determining whether a joint venture exists, the factors to be considered are the intent of the parties (express or implied), whether there was joint control and management of the company, whether [*3]there was a sharing of the profits as well as a sharing of the losses and whether there was a combination of property, skill or knowledge" (Mendelson v Feinman, 143 AD2d 76, 77 [1988]).
Here an express agreement between BOCES and CCSD establishing a joint venture is lacking, as are any acts by them manifesting an intent to be associated as joint venturers (see Village of Wellsville; Mendelson; cf. Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288 [2003]). A simple agreement permitting BOCES to use four classrooms for its special education program does not imply a joint venture. That CCSD remained in total control of the school building and its property that plaintiff claims was negligently maintained negates the argument that a joint venture existed (see Village of Wellsville). Other than being required to comply with CCSD's building rules, plaintiff remained at all times an employee of BOCES and subject to its control. Furthermore, the special education program she conducted was formulated and delivered by BOCES {**2 Misc 3d at 970}and under its exclusive control. Thus, the essential characteristics of a joint venture are missing (id.; see also Matter of Steinbeck at 317), as is a profit motive.[FN*]

There is a more compelling reason why CCSD's joint venture argument must be rejected. School districts, like other municipal corporate bodies, are "purely creatures or agents of the State," which has delegated the authority over education they exercise (City of New York v State of New York, 86 NY2d 286, 289-290 [1995]). The well-recognized right of children in New York to obtain a free, public school education includes the right to free specialized educational training as may be required (NY Const, art XI, § 1; art VII, § 8; see generally Matter of Wiltwyck School for Boys v Hill, 11 NY2d 182 [1962]; accord Matter of Levy [City of New York], 38 NY2d 653, 657-659 [1976], appeal dismissed 429 US 805, [1976], reh denied 429 US 966 [1976]). To accomplish this objective, the Legislature has provided a comprehensive plan for the education of handicapped and disabled children (see generally Education Law art 89). Nothing found in article 40 of the Education Law suggests that boards of cooperative educational services are authorized or intended to engage in joint ventures with their component districts to provide special education programs. Sharing the control of those programs and management of school buildings owned by component districts in which the boards of cooperative educational services occupy only limited space is inconsistent with the legislative scheme found in the Education Law. Finally, a joint venture for the delivery of special education services may not be implied. Boards of cooperative educational services are authorized to provide special education services to component school districts only with approval of the Commissioner of Education (Education Law § 1950 [4] [d] [1]). Formal contracts for those services must be filed with the commissioner (id.; § 1950 [4] [d] [4]). It follows that a joint venture between a board of cooperative educational services and its component districts for special education purposes by implication is contrary to law and may not be raised as an affirmative defense in this action.
The alternative argument that plaintiff, who received workers' compensation benefits as an employee of BOCES, was CCSD's special employee and, therefore, is barred by the Workers'{**2 Misc 3d at 971} [*4]Compensation Law from prosecuting her claim against it also fails as a matter of law. "A special employee is described as one who is transferred for a limited time of whatever duration to the service of another" (Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557 [1991], citing Brooks v Chemical Leaman Tank Lines, 71 AD2d 405, 407 [1979]). The presumption that the general employment continues is overcome "upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer" (Thompson at 557, citing Stone v Bigley Bros., 309 NY 132, 140-143 [1955] [and cases cited there]; Sweet v Board of Educ., 290 NY 73 [1943]). While a person's status as a special employee is generally a question of fact (see Short v Durez Div.-Hooker Chems. & Plastic Corp., 280 AD2d 972 [2001]; Ozzimo v H.E.S., Inc., 249 AD2d 912 [1998]), here it has been conclusively established that BOCES at all times directed and monitored plaintiff's job performance (see Thompson at 558). Although plaintiff was subject to the building rules, she had not been loaned to CCSD, which did not pay her and could not control her job performance or discharge her from her employment (see Sweet at 76-77; Vanderwerff v Victoria Home, 299 AD2d 345 [2002]). When plaintiff was on CCSD's premises, she was there solely in her capacity as an employee of BOCES (see Rothenberg v Erie Metal Stamping Co., 204 AD2d 249 [1994], lv dismissed 84 NY2d 1026 [1995]). As CCSD lacked authority to control and direct plaintiff's job performance, she was not its special employee (see Martin v Baldwin Union Free School Dist., 271 AD2d 579 [2000]; cf. Urena v Pace Univ., 1 AD3d 208 [2003]).
The motion by defendant CCSD for summary judgment dismissing the complaint is denied. Plaintiff's cross motion for partial summary judgment dismissing CCSD's twelfth affirmative defense is granted.

Footnotes

Footnote *: I assume without deciding that a joint enterprise might exist for nonprofit purposes as well. In such circumstances, an employee of one member of such an enterprise could be barred by the exclusivity provisions of the Workers' Compensation Law from asserting a claim against other members.